# SUPREME JUDICIAL COURT

### AT THE

## NOVEMBER SESSION 1869, IN BOSTON.

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr.,
Hon. JOHN WELLS,
Hon. SETH AMES,         } Justices.
Hon. MARCUS MORTON,

## COMMONWEALTH vs. JOHN DORSEY.

The St. of 1869, c. 151, giving the Commonwealth a right of peremptorily challenging
jurors in criminal cases, is constitutional.

On the trial of an indictment for murder, testimony of persons, not experts, is admissible,
that hairs on a club appeared to the naked eye to be human hairs and resembled the hair
of the deceased; and evidence offered by the defendant that five months after the alleged
homicide there was hair on wood-piles in the yard where it occurred, and that the yard
had remained substantially in the same condition during the interval, is inadmissible.

INDICTMENT for the murder of Mary Dorsey, the defendant's
wife, by striking her upon her head with a club, on May 1, 1869.
Trial before *Chapman,* C. J., *Gray, Colt* and *Ames,* JJ., at a spe-
cial term in October 1869 for Hampshire.

Upon the empanelling of the jury, the attorney general per-
emptorily challenged a juror. The defendant objected that the
Commonwealth had no right of peremptory challenge; and that

the St. of 1869, *c.* 151, allowing it, was unconstitutional; but the objection was overruled, and the challenge allowed.

" The Commonwealth introduced circumstantial evidence tending to show that the murder was committed by the defendant with a club, in the yard of his own house, late in the evening of May 1, and, among other things, that the next day there were several hairs adhering to the club with which it was contended that the murder was committed. A witness, not an expert, was allowed, against the defendant's objection, to testify that these hairs appeared to his naked eye to be human hairs.

"Another witness, called by the defendant, was asked, on cross-examination, whether he did not think that the hairs, which he saw on the club on the day after the homicide, came from the head of the deceased. The defendant objected, but the objection was overruled, and the witness answered, ' My impression was that they resembled hers.' The witness had previously testified that he was one of the jury at the coroner's inquest, and saw and compared the hairs of the deceased with those on the club.

" The defendant introduced evidence that there was a horse-post in the yard, to which horses were frequently tied, at and before the time of the homicide. He then offered to show that the wood-piles in the yard had remained in substantially the same condition as at that time, and that there were hairs on some of the wood on the 9th of the subsequent October. But the evidence was objected to by the attorney general, and excluded by the court as immaterial."

The jury found the defendant guilty, and he alleged exceptions, which were argued at Boston before all the judges but *Ames,* J.

*C. Delano,* for the defendant. 1. The St. of 1869, *c.* 151, providing that in capital cases the Commonwealth shall be entitled to challenge peremptorily five of the jurors from the panel called to try the cause, is unconstitutional. Trial by jury according to its meaning in Magna Charta, and as it was understood in England generally till the emigration of our ancestors, with all its common law incidents, was introduced into the

colony, perpetuated in the province, reaffirmed in the Constitution, and thus by a permanent, uniform and universal usage and authority has become in every essential feature irrepealable, except by a change in the Constitution itself. The giving of the right of peremptory challenge to the defendant only is an essential feature. There is no just analogy between the action of the court with reference to the body of jurors present in court, and the municipal or executive machinery in the county by which the array is furnished to the court.

2. Testimony of the witnesses, not experts, that the hairs on the club appeared to be human hairs, and that they resembled the hair of the deceased, was inadmissible. *State* v. *Knight*, 43 Maine, 11. 1 Whart. Crim. Law, §§ 848 *et seq.* Taylor Med. Jurisp. (6th Am. ed.) 234.

3. The evidence of the hairs found on the wood in October was admissible.

*C. Allen*, Attorney General, for the Commonwealth. 1. The right of trial by jury is not impaired by allowing the Commonwealth to challenge jurors peremptorily. The right is, to be tried by an impartial jury. It is no part of the design of the Constitution that persons charged with crime shall have a right to select the jurors by whom they will be tried. And it is quite immaterial, so far as the Constitution is concerned, in what manner jurors are selected, or for what reasons jurors are rejected, if those who actually sit are impartial. There is, in the different states, a great diversity in the details of the mode of drawing jurors in the first instance. It cannot be supposed that any change of legislation in respect to these details would be unconstitutional. Nor can it be a matter of doubt that it is within the constitutional power of the legislature to change the qualifications of jurors ; to create special exemptions from jury duty, by reason of age, occupation, residence, or to remove existing exemptions ; to vary the places from which jurors shall be taken; to determine whether aliens may serve or not; to define how often men may be called upon or allowed to serve; and in other similar respects to regulate the selection of jurors. *Mountfort* v. *Hall*, 1 Mass. 443, 451. *Colt* v. *Eves*, 12 Conn. 243 252

There is no legal presumption that all those who are drawn as jurors are fit for jury duty. Men legally exempt, and even legally disqualified, are often thus drawn. Even of those who have the legal qualifications, and are not legally exempt, some are occasionally found unfit by reason of physical infirmity; from obvious mental or notorious moral defects; from mental disquietude in consequence of existing or impending misfortune; from intoxication; or from having a contagious disorder. In all these and many other supposable cases, it cannot be that the accused has a right to demand that these unfit persons shall sit upon the jury to try him. Especially is this so where jurors are drawn, as here, by lot.

There may be instances where the prosecuting officer has information showing the unfitness of a juror; and yet is unable to prove the fact, without a violation of private confidence, or by reason of the death of the person who told him. There may be cases of corruption fully believed or strongly suspected, and yet from the nature of the case incapable of proof. There may be other cases of manifest unfitness to sit in judgment upon a particular case. There can be no constitutional right, on the part of a criminal, to insist upon being tried by jurors like these. The fact that, when two or more prisoners are tried jointly, one may challenge a juror whom another may wish to retain upon the panel, is held to furnish no ground for separate trials. *Commonwealth* v. *James*, 99 Mass. 438. *United States* v. *Marchant*, 12 Wheat. 480, 482. *United States* v. *Wilson*, Baldw. 78, 82. So in this Commonwealth, in England and elsewhere, the existing right of persons accused of crime to make peremptory challenges has been abridged. St. 1795, *c.* 45, § 3. St. 22 Hen. VIII. *c.* 14. 4 Bl. Com. 354. 1 Chit. Crim. Law, 534, 535. Joy on Confessions and Challenges, 148–162. U. S. St. 1790, *c.* 9, § 30. *Dowling* v. *State*, 5 Sm. & Marsh. 664, 685. *Perry* v. *Commonwealth*, 3 Grat. 632.

By the ancient common law, the king might challenge peremptorily as many jurors as he pleased. Co. Lit. 156 *b.* By judicial construction and the practice of centuries, under the St. 33 Edw. I. St. 4, the prosecuting officer, when he challenges a juror, does not assign his cause until the whole list has been

gone through with ; and if a full jury can be obtained without recalling those who have been set aside, the cause of challenge is not assigned at all. He thus exercises a right of peremptory challenge which is practically unlimited. Staundf. P. C. *lib.* 3, *c.* 7, *ad fin.* Co. Lit. 156 *b.* 2 Hawk. bk. 2, *c.* 43, §§ 2, 3. 2 Hale P. C. 271. Bac. Ab. Juries, E. 10. 4 Bl. Com. 353. Kennedy on Juries, 100. Forsyth on Trial by Jury, 232. *Rex* v. *O' Coigly,* 26 How. St. Tr. 1231–1241. *Regina* v. *Frost,* 9 C. & P. 129, 136. *Mansell* v. *The Queen,* 8 El. & Bl. 54, 103 ; *S. C.* Dearsly & Bell, 375. By U. S. St. 1865, *c.* 86, § 2, when the offence charged is treason, or a capital offence, the United States are entitled to five peremptory challenges ; and in certain other cases to two. In various states and territories the government has the right of peremptory challenge in criminal cases, by statute. Maine, St. 1867, *c.* 108. New Hampshire, St. 1860, *c.* 2350. Massachusetts, St. 1869, *c.* 151. Rhode Island, Rev. Sts. of 1857, *c.* 172, § 33. Connecticut, Gen. Sts. of 1866, tit. 12, *c.* 12, § 239. New York, St. 1858, *c.* 332, § 1. Pennsylvania, Crim. Proc. Act, 1860, § 37. Delaware, Rev. Code of 1852, *c.* 133, § 16. Maryland, 1 Code of 1860, art. 50, § 15 ; 2 Code of 1860, art. 4, § 618. North Carolina, Rev. Code of 1854, *c.* 35, § 33. Georgia, Code, (Irwin's Rev. of 1868) §§ 4549, 4550. Alabama, Rev. Code of 1867, § 4179. Mississippi, Rev. Code of 1857, *c.* 64, art. 297. Louisiana, Rev. Sts. of 1856, p. 163, § 24. Texas, Paschal's Dig. (1866) §§ 3037–3039. Arkansas, Dig. of Sts. (1858) *c.* 52, § 154. Tennessee, Code of 1858, §§ 4013, 4014. Kentucky, Crim. Code, 191. Ohio, 1 Rev. Sts. of 1860, *c.* 62, § 15. Michigan, St. 1861, No. 72 ; Comp. Laws of 1857, *c.* 128, § 58. Indiana, 2 Rev. Sts. of 1852, part 3, *c.* 1, § 82. Illinois, 1 Sts. of Ill. (1856) *c.* 30, § 230. Missouri, Gen. Sts. of 1865, *c.* 213, § 6. Wisconsin, Rev. Sts. of 1858, *c.* 179, §§ 3, 4. Iowa, Rev. Sts. of 1860, *c.* 211, § 4779. Minnesota, St. 1868, *c.* 86. Kansas, Gen. Sts. (1868) *c.* 82, § 199. California, Wood's Dig. art. 1610. Nevada, St. 1861 *c.* 104, § 336. Oregon, St. 1864, *c.* 15, § 155. Washington Territory, St. 1859, p. 142, § 188. Idaho Territory, Laws of 1864, p. 277. Colorado Territory, Rev. Sts. of 1868, *c.* 22, § 212, Nebraska Territory, Rev. Sts. of 1866, part 3, § 191. The Eng-

lish practice, above referred to, has been said by some to be a part of the common law of this country; and it is adopted in South Carolina, and perhaps in others of the few states where the right of peremptory challenge is not conferred expressly by statute. 1 Bishop Crim. Proc. § 800. 3 Whart. Crim. Law, § 2956. *Mansell* v. *The Queen,* 8 El. & Bl. (Am. ed.) 116, note. *State* v. *Stalmaker,* 2 Brev. 1. *State* v. *Barrontine,* 2 Nott & McCord, 553. *State* v. *Bone,* 7 Jones, (No. Ca.) 121. *Commonwealth* v. *Jolliffe,* 7 Watts, 585, 586. *Jewell* v. *Commonwealth,* 22 Penn. State, 94. *United States* v. *Douglass,* 2 Blatchf. 207, 210. *United States* v. *Marchant,* 12 Wheat. 480, 483. The constitutionality of these statutes, when questioned, has been uniformly upheld. *Warren* v. *Commonwealth,* 37 Penn. State, 45. *Hartzell* v. *Commonwealth,* 40 Penn. State, 462. *Walston* v. *Commonwealth,* 16 B. Monr. 15. *Jones* v. *State,* 1 Kelly, 610. *Boon* v. *State,* Ib. 618. *Hudgins* v. *State,* 2 Kelly, 173. In other states, the validity of these statutes has been recognized or assumed by the courts. *Schoeffler* v. *State,* 3 Wisc. 823, 837–839. *Wiley* v. *State,* 4 Blackf. 458. *Beauchamp* v. *State,* 6 Blackf. 299. *Fouts* v. *State,* 8 Ohio State, 98, 104. *Mallison* v. *State,* 6 Missouri, 399. *State* v. *Craton,* 6 Ired. 164. *State* v. *Arthur,* 2 Dev. 217. *State* v. *Benton,* 2 Dev. & Bat. 196, 203–206.

So likewise, a judge, of his own motion, may set aside a juror deemed by him to be evidently unsuitable. *Mansell* v. *The Queen,* 8 El. & Bl. 54, 80, 106, 107, 109, 110, 112–115; *S. C.* Dearsly & Bell, 375, 405, 406, 419, 421, 425. *United States* v. *Morris,* 1 Curt. C. C. 23, 35–37. *United States* v. *Cornell,* 2 Mason, 91, 104–106. *Lewis* v. *State,* 9 Sm. & Marsh. 115. *Montague's case,* 10 Grat. 767, 772. Junius, letters xli, lxi. See also *Commonwealth* v. *Hayden,* 4 Gray, 18, 21.

2. The evidence of the witnesses, though not experts, as to the hairs on the club, was admissible.

3. The evidence as to the condition of the wood-piles was properly excluded.

CHAPMAN, C. J. The attorney general having challenged a juror under the provisions of the St. of 1869, *c.* 151, which gives him the right, on the trial of a capital offence, to challenge per-

emptorily five of the jurors from the panel called to try the cause, the prisoner objected that the Commonwealth had no right of peremptory challenge, because the statute is unconstitutional. The particular provision of the Constitution applicable to the case is the last clause of art. 12 of the Declaration of Rights, " And the legislature shall not make any law that shall subject any person to a capital or infamous punishment, excepting for the government of the army and navy, without trial by jury." The jury referred to in this provision is what has been known as a petit jury, which consisted, by the common law, of " twelve good and impartial men of the neighborhood." Bac. Ab. Juries. Undoubtedly the Constitution contemplated a jury of twelve men, who should be good and impartial. The neighborhood, in this Commonwealth, has always included the county. But it is not contemplated that they shall know the parties and the case beforehand, so as to try cases on their personal knowledge, as they formerly did. *Schmidt* v. *New York Union Insurance Co.* 1 Gray, 529, 535. On the contrary, they are to try causes on evidence produced before them, and should know so little of the case as not to have formed or expressed any opinion in regard to its merits, and should be free from bias or prejudice. But the method of selecting jurors is left by the Constitution to be regulated by legislative enactments; and these may be modified from time to time as the legislature shall think proper.

By the English law, from which the right of trial by jury is derived, a juror must have a certain property qualification ; but this is not an essential feature of the institution, and may be modified. Jurors were selected to a certain extent by the sheriff, and this made his impartiality in respect to the causes to be tried very important. 3 Bl. Com. *c.* 23. But our Constitution has never been held to restrain the legislature from adopting better modes of selection. And in respect to the point before us, by the common law the king might challenge peremptorily without being limited to any number. This right has been restrained by several acts of parliament, and the later practice has been that the officer of the crown directs a person to whom he

objects to "stand by," and he continues to do this without assigning any cause, till the panel is gone through. If a full jury cannot be obtained, they are then called again in turn, and he must then show cause. But in practice it gives the crown an extensive right of peremptory challenge. *Mansell* v. *The Queen*, 8 El. & Bl. 54. Bac. Ab. Juries. If the framers of the Constitution had intended to prohibit the legislature from conferring a right of peremptory challenge on the government, their knowledge of the institution of trial by jury would have induced them to express that intent. Many changes have been made by legislative acts in respect to the qualifications of jurors, the methods of selecting and summoning them, and of forming a panel, which differ materially from the ancient practice, and it has not been supposed that the Constitution was violated by such provisions. It has been thought expedient to increase the number of challenges on the part of the prisoner to twenty-two. The experience and observation of the court have made it apparent that a limited power of peremptory challenge is important to the government in many instances, in order to obtain an impartial jury, and we see no ground to regard such a power as unconstitutional. The statutes and authorities cited by the attorney general show that the power of peremptory challenge on the part of the prosecuting officer exists in a large number of the states of the Union, and is upheld by the courts.

A witness, who was not an expert, was permitted, against the objection of the prisoner, to testify that certain hairs which were found adhering to the club mentioned in the bill of exceptions appeared to his naked eye to be human hairs, and another testified to his impression that they resembled the hairs of the deceased. The objection to this evidence rests upon the general principle that witnesses who are not experts cannot testify to their opinions, but are limited to statements of fact, and it is contended that this testimony is merely an expression of opinion. But there is a large class of facts in regard to which judgment or opinion is all that can be expressed. Such testimony is admissible in respect to the value of property and damage done to it. *Vandine* v. *Burpee*, 13 Met. 288. *Walker* v. *Boston*,

8 Cush. 279. *Dwight* v. *County Commissioners,* 11 Cush. 201 *Swan* v. *County of Middlesex,* 101 Mass. 173. Also whether a horse eats well, travels well, and appears to be free from disease. *Spear* v. *Richardson,* 34 N. H. 428. And in *Hackett* v. *Boston, Concord & Montreal Railroad Co.* 35 N. H. 390, the court say that in most cases when a witness is examined as to distances, dimensions, weight or any quality of the matter in question, he cannot testify except by the use of language which necessarily implies his opinion. Many facts that we know through our senses are of this character. In testifying to the identity of a person, the statement often can be nothing more than belief or opinion. This is especially so when the person was seen in the night, or at a distance, or for a very short time. So as to the identity of one of his garments, or a fragment of a garment. So of footprints, animals and many other objects, and of the size or color of objects, the character and quality of objects or the value of property, or of sounds or noises. Handwriting is of the same character. See 1 Greenl. Ev. § 440, and cases cited. The question whether an object appears to be a human hair, or to resemble the hair of a certain person, is of the same character. There may be less certainty about it than if the testimony related to the face or some other part of the body, but the principle is the same. When other tests than the senses are to be applied to these subjects in order to gain knowledge that cannot be gained by common observation, but must be acquired by the application of special skill or learning, the testimony of experts must be resorted to, yet that evidence does not render the testimony of common observers inadmissible, so far as such observation can go. For example, in the present case, any witness could state that the deceased appeared to be dead ; that there appeared to be blood upon or about her; that there was a wound upon her head from which brains appeared to be escaping ; and that her hair appeared to be matted or dishevelled and a portion of it appeared to have turned gray. But the effect of such wounds in destroying life the question whether the blood was found by analysis to be human blood, or whether what appeared to be brains was not in

fact some other matter, might require scientific examination, the results of which could only be stated by an expert. We think that the testimony as to the hairs was properly admitted.

The testimony offered in behalf of the prisoner, in respect to hairs seen on the wood-piles on the 9th of October, related to a period more than five months subsequent to the murder. This period is so remote as to make the evidence unreliable and immaterial; and it was properly rejected.

*Exceptions overruled.*