| 4  | 247 |
| 11 | 263 |
| 11 | 271 |
| 11 | 282 |
| 4  | 247 |
| 24 | 409 |

# THE PEOPLE OF THE TERRITORY OF UTAH, RESPONDENT, v. FRED. HOPT, APPELLANT.

AFFIRMED: HOPT v. UTAH, 120 U. S., 430.

CRIMINAL LAW.—CHALLENGE FOR IMPLIED BIAS.—Where challenges for implied bias are general specifying none of the grounds mentioned in the statute, they may be disregarded.

ID.—CHALLENGE FOR ACTUAL BIAS.--Challenges for actual bias allowed by the court cannot be reviewed, and the judgment of the court as to the competency of the juror is conclusive.

ID.—PEREMPTORY CHALLENGES NOT EXHAUSTED.—Where defendant had not exhausted his peremptory challenges, when the jury was sworn, he cannot complain that a challenge for cause to one of the jurors was disallowed.

ID.—EVIDENCE.—OPINION OF WITNESS.—The opinion of a physician, after making a *post mortem* examination of the deceased, who came to his death by a blow inflicted upon his head, as to the direction from which the blow was delivered, is admissible in evidence.

ID.—REMARKS OF COUNSEL TO JURY.—A remark of counsel for the prosecution that cause had been tried a number of times before, is not ground for granting a new trial under the statute forbidding reference to a former verdict.

APPEAL from a judgment of conviction of the district court of the third district and from an order refusing a new trial.

The juror Gabott, challenged both for actual and implied bias, testified on his direct examination on *voir dire*, that he had heard of the case through the newspapers, and had read what was represented to be the evidence; that he had talked about it since that time; that he did not think he had ever expressed an opinion on the case, but that he had formed a qualified opinion, that is if the evidence were true and if the reports were true; that he had an opinion of the guilt or innocence of the accused that it would take evidence to remove; but that he thought he could go into the jury box and sit as if he had never heard of the case, and that what he had heard would not make the least difference. On cross-examination he said that he knew noth-

ing about the case except what he had read from time to time in the public press; that, if what he had heard turned out to be the facts in the case, he had an opinion, otherwise not; that is, his opinion was a qualified one, and that according to his present state of mind, he could sit on the jury and determine the case without reference to anything he had heard; that he was not conscious of any bias or prejudice that might prevent him from dealing with the defendant impartially; and that he thought he could try the case according to the law and the evidence given in the case. On his re-examination he further stated that he would be guided by the evidence altogether, without being influenced by any opinion he might then have, or might have previously formed. The court held the juror to be competent.

The juror, Winchester, who was also challenged for actual and implied bias, testified on *voir dire*, that he had heard of the case through the newspapers; that he had heard it talked of some years ago; that he had heard what purported to be the evidence as given in the newspapers on previous trials, and believed he had formed and expressed an opinion as to the guilt or innocence of the accused, and though it was an unqualified opinion, it was not a fixed or settled one; that at the time he read the papers, he had formed such an opinion as would have required testimony to remove it from his mind, and if his memory was refreshed as to the testimony there would probably be a renewal of the opinion he had formed; that he had not talked with any one and could hardly tell the circumstances now; that he believed that his mind was free from any impression, and that he could sit on the jury and try the case precisely as if he had never heard of it or read of it. To inquiry of the court he said that he could try the defendant impartially according to the evidence. The court, thereupon, held that he was competent, and the challenge was disallowed. The defendant, thereupon, peremptorily challenged the juror and he was excused.

The juror, Young, challenged for actual bias, testified that he had heard of the cause, that he had never talked

with any one who pretended to know about it; that he had impressions as to the guilt or innocence of the defendant, but could not say that he had ever formed any opinion on the subject, and did not remember that he had ever expressed any; that possibly his impressions were strong enough to create, from sympathy, some bias or prejudice, but he thought he could sit on the jury and try the case impartially, as if he had never heard of it before.

The challenge was disallowed and the juror was then challenged peremptorily and excused.

The defendant had left several peremptory challenges to be exercised when the jury was completed. The opinion states the remaining facts.

*Mr. P. L. Williams and Mr. Ben. Sheeks,* for appellant.

*Mr. S. R. Thurman, Mr. W. H. Dickson and Mr. C. S. Varian,* for respondent.

POWERS, J.:

The defendant was indicted for the murder of John F. Turner. He has seemed to live a charmed life, for. he has been tried four times, each time convicted of murder in the first degree and sentenced to death, and three times he has been granted new trials. The case is now here for a review of the fourth trial. The record, although a long one, is remarkably free from error. The defendant has been defended by able counsel appointed by the court, and all his rights appear to have been carefully guarded.

1. The first point made, and which is urged why a new trial should be granted, is that three of the jurors were not qualified to sit. We are of the opinion that the jurors were competent. The opinions that they had formed were not such as would disqualify them under our statute: Laws 1884, p. 124, amending par. 244, Laws 1878. Besides in no challenge made for implied bias was any one of the nine grounds of challenge for implied bias pointed out to the court, as being that upon which the defendant relied. The challenges were general. The court, therefore,

properly disregarded the challenge: Laws 1878, par. 242; *People* v. *Hardin,* 37 Cal., 258; *People* v. *Dick,* 37 Cal., 277; *People* v. *McGunkle,* 41 Cal., 429; *People* v. *Walsh,* 43 Cal., 447; Laws 1884. p. 124. Challenges for actual bias cannot be reviewed: Laws 1878, par. 309. Another and a perfect answer to the point raised is, that of the three jurors challenged two were not sworn. One was challenged peremptorily by the defendant, and one by the people. Whether, therefore, the challenges were properly denied or not, they did not sit as jurors, the defendant was not prejudiced by the ruling: *Conway* v. *Clinton,* 1 Utah, 216; *Mims* v. *The State of Ohio,* State R., 221. The record shows that when the jury was sworn, the defendant still had three peremptory challenges remaining to him. Had he chosen he could have challenged the juror peremptorily when he challenged for cause. Until he had exhausted his peremptory challenges he could not complain. See dissenting opinion Boreman, J., *Conway* v. *Clinton,* 1 Utah, 224; *Fish* v. *State,* 6 Mo., 426; *Whittaker* v. *Carter,* 4 Iredell, 461, 41 Cal., 429.

2. The blow, which caused the death of the deceased, was inflicted upon the left side of the head, crushing the jaw and extending upwards and backwards, completely crushing through the skull. Dr. J. M. Benedict, after describing the injury minutely as it appeared to him upon *post mortem* examination, and after having stated that the injury was apparently inflicted with some blunt instrument, was asked the following questions:

Q. From what you have observed as the result of your examination, were you able to form an intelligent opinion as to the direction from which the blow was delivered?

To this question the counsel, for defendant, objected; that it was not a question for an expert, but a matter in which a jury or ordinary man can judge. Objection overruled and exception allowed.

A. Yes, sir.

Q. As a result of your examination? Objected to for the same reason as last above stated. Objection overruled and exception taken.

A. Yes, sir; I did form an opinion.

Q. What was your opinion? Objected to by the defendant's counsel on the same grounds as before stated, as being a question that may be answered as well by the jury. The jury may get at it as well by the facts as by the testimony of an expert. It is incompetent. Objection overruled and defendant's counsel excepted.

A. My opinion is that the blow was delivered from behind and above the head of the person struck, and from the left towards the right.

Defendant's counsel moved to strike out that part of the answer which stated that the blow was struck from the left side toward the right as not being a matter upon which an expert can give an opinion, being a matter which should be left to the jury, and not being an opinion for a physician or a matter upon which a physician can give an opinion. The motion was denied and an exception taken.

On the following morning Mr. Varian, on behalf of the prosecution, said:

"You Honor, we ask to have stricken from the record and the jury instructed to disregard it, the evidence given by Dr. Benedict, yesterday, relative to his opinion in regard to the direction from which the blow was delivered."

Counsel for defendant stated that the defense did not object to the motion being granted, but desired that the record should show that it was on the following morning that the application was made. The reporter then read the evidence and the court stated, "the jury will understand that this is stricken out and will not regard it at all." There was no evidence in the case showing the defendant to be a left handed man.

The defense urge that it was error to admit the testimony objected to and that the error was not cured by striking it out. That the jury considered the testimony over night and that the picture was fixed in their minds of the deceased seated, unconscious of harm, and the defendant, who is shown to be a left handed man, standing behind him and dealing the fatal blow from the left toward the right.

The argument advanced upon this point has three answers.

1.   We think the testimony admissible.   The exception to the general rule that witnesses cannot give opinions is not confined to evidence of experts testifying on subjects requiring special knowledge, skill or learning; but includes the evidence of common observers testifying to the results of their observations made at the time, in regard to common appearances or facts, and a condition of things which cannot be reproduced and made palpable to a jury.   Such evidence has been said to be competent from necessity, on the same ground as the testimony of experts, as the only method of proving certain facts essential to the proper administration of justice.   Nor is it a mere opinion which is thus given by a witness, but a conclusion of fact to which his judgment, observation and common knowledge have led him in regard to a subject matter which requires no special learning or experiment, but which is within the knowledge of men in general: *Com.* v. *Sturtevant,* 117 Mass., 122, 19 Am. Rep. 405.

Every person is competent to express an opinion on the question of identity, as applied to persons, things, animals or handwriting, and may give his judgment in regard to size, color, weight, of objects and may estimate time and distances.   He may state his opinions with regard to sounds, their character, from what they proceed, and the direction from which they seem to come: *State* v. *Shirborn,* 46 N. H., 497; *Com.* v. *Pope,* 103 Mass., 440; *Com.* v. *Dorsey,* 103 Mass. 412.

Non-experts have been allowed to testify whether certain hairs were human: *Com.* v. *Dorsey,* 103 Mass., 412; that one person appeared to be sincerely attached to another: *McKee* v. *Nelson,* 4 Com. 355; and as to whether another was intoxicated: *People* v. *Eastwoard,* 14 N. Y., 562; as to whether a person's conduct was insulting: *Raischer* v. *Springer,* 40 Miss., 352; as to resemblance of foot tracks: *Hotchkiss* v. *Germanica Ins. Co.,* 5 Hun., 90; as to value of property when competent: *Brown* v. *Haburger,* 52 Barb., 15; *Blank* v. *Mudgett,* 44 N. Y., 514; *Bedell* v. *Long Island R. R. Co.,* 44 N. Y., 367; *Swan* v. *Middlesex Co.,* 101 Mass., 172; *Suydam* v. *Western Union R. R. Co.,* 25 Wis., 60; *Brackett* v. *Edger-*

*ton*, 14 Minn., 174; as to market value of cattle derived from newspapers: *Cleveland R. R. Co.* v. *Perkins*, 17 Mich., 296; whether there was hard pan in an excavation: *Currier* v. *Boston & Maine R. R.*, 34 N. H., 498; whether one acted as if she felt sad: *Culver* v. *Dwight*, 6 Gray, 444; as to the rate of speed of a railroad train on a certain occasion: *Detroit &c.* v. *Von Steinberg*, 17 Mich., 99; as to whether noisome odors render a dwelling uncomfortable: *Kearney* v. *Farrell*, 28 Conn., 317; whether the witness noticed any change in the intelligence or understanding, or any want of coherence in the remarks of another: *Barker* v. *Convirs*, 110 Mass., 477; *Nash* v. *Hunt*, 116 Mass., 237.

The cases which have been cited are limited to those instances where common observers, having special opportunity for observation, but not experts having special learning, have been permitted to testify to their opinions as to conclusions of fact. The admissibility of the evidence rests upon three necessary conditions:

1. That the witness detail to the jury, so far as he is able, the facts and circumstances upon which his opinion is based, in order that the jury may have some basis by which to judge of the value of the opinion.

2. That the subject matter to which the testimony relates cannot be reproduced and described to the jury precisely as it appeared to the witness at the time. And

3. That the facts upon which the witness is called upon to express his opinion are such as men in general are capable of comprehending and understanding.

When these conditions have been complied with or fulfilled in a given case, the court must then pass upon the question whether the witness had the opportunity and means of inquiry, and was careful and intelligent in his observation and examination. It is not the mere qualification of the witness, but the extent and thoroughness of his examination into the specific facts to which the inquiry relates and the general character of those facts, as affording to one, having his opportunity to judge, the requsite means to form an opinion. The same rule applies to this class of testimony as to the testimony of experts. Whether

the expert is competent by his study or business, and whether he has qualified himself to testify, or had proper opportunity to examine, are preliminary questions for the court. So, when witnesses to the value of land or property or handwriting are called, to which all men may testify, if they have information on the subject matter of inquiry, their qualifications to give an opinion must be first decided by the court at the trial. In all these cases the element of fact is involved to be decided by the court, upon which the capacity to testify depends. And the decision at the trial, like all decisions of this character, is final and conclusive, unless upon a report of all the evidence it is shown to be without foundation, or is based upon some erroneous application of legal principles: *Com.* v. *Sturtevant*, 117 Mass., 122, 19 Am. Rep., 409; *Necnes* v. *Perry*, 113 Mass., 274; *Com.* v. *Coe*, 115 Mass., 481; *Swan* v. *Middlesex*, 101 Mass., 173, 177.

In the case at bar the admission of the evidence by the court involved the decision:

1. That the wound, as it appeared when examined by the witness, could not be reproduced before the jury; upon this, as a matter of fact, there can be no question.

2. That the wound might, itself, furnish indications from what direction it came, capable of being observed by the witness; and

3. That the witness had made that thorough, careful and intelligent observation of the appearances which would entitle him to testify, we must take the decision of the court upon this last point to be conclusive.

In *Steamboat Clipper* v. *Logan*, 18 Ohio, 375, it was held that a person who had been a captain and engineer of a steamboat, having examined a boat after injury by a collision, may state his opinion as to the direction from which the boat was struck at the time of the collision. There was no evidence that the witness had any special knowledge in regard to collisions, through observation or experiment, and the court does not rest the decision on the ground the witness was an expert; but says there is no objection to calling these men experts if the name will render their testimony more unexceptionable; but it is not

true as a legal proposition that no one but an expert can give an opinion to a jury. From the necessity of the case testimony must occassionally be a compound of fact and opinion." And the court say that they can give no better illustration of their meaning than by the use of the language in *McKee* v. *Nelson*, 4 Cow., 355, where it said that "the opinion of witnesses on this subject must be derived from a series of instances passing under their observation which yet they never could detail to a jury."

Where, immediately after the collision of two boats, a person looked at their condition, he was permitted to testify to the impression made upon his mind as to the position in which they came together: *Patrick* v. *The John·Q. Adams*, 19 Mo.. 73.

On the trial of an indictment for murder, a witness familiar with blood, who had examined with a lens a blood stain on a coat, when it was fresh, and who testified to its appearance at the time he examined it, and that it was not in the same condition at the trial, was permitted to testify that its appearance, when he examined it, indicated the direction from which it came, and that it came from below, upwards, although he had never experimented with blood or other fluid in this respect: *Com.* v. *Sturtevant*, 117 Mass., 402.

In the case last cited it is said that "it would seem to be within the knowledge of men in general, when looking at the effect of a blow upon a solid body, to determine from external marks and indications, if any exist, the direction from which it came. In the great majority of cases these indications are distinct and plain, and to observe them is within the constant experience of men. Take the case of a heavy body striking on the ground. A falling shot or fragment of rock, leaves a very different mark according as it strikes the ground vertically or at an angle; and if at an angle the general direction from which it came would be apparent to the common eye.

In like manner a contusion on an upright surface might plainly indicate the direction of the blow. Suppose the panel of a carriage door is broken in by a collision, a different appearance would follow from a horizontal blow de-

livered at right angles, than from a blow from the front or rear, from above or below. Such appearance the common observer can detect, some more accurately and clearly than others, but it is presumed to be within the power of all. And the opinion of an expert who has experimented by blows on similar surfaces and is learned in the law of forces, is not necessary or required. If the panel, itself, is produced to the jury, they are competent and able to decide the question. If it cannot be, the witness who saw it may describe, as well as he can, what he saw, and state the conclusion he formed at the time."

There is no question of science or learning involved necessarily in the understanding of the evidence indicating from what direction a blow came. If visible, they are easily understood. The only question is were the common indications visible from which direction may be inferred. It may be difficult in a given case to distinguish them without the most careful observation; but if seen by the witness, they may be testified to. The fact that the indications are difficult to detect, goes to the degree or weight of the evidence, not to its competency: *Fryer* v. *Galbercole*, 4 Exch., 262.

2. Even had the testimony been inadmissible, the defendant could not have been prejudiced by its admission. Taking the entire case, his guilt is conclusively shown. It is very clear that he committed a cold-blooded and premeditated murder. No unprejudiced mind can read the record in the case and come to any other conclusion. This being so, we come to the last reason why there was no error in the ruling now under consideration.

3. The testimony was stricken out by the court and the jury told to disregard it. Taking the three reasons just considered together, and it seems to us, that if there was error, it was error to the detriment of the people and not the defendant.

III. During the argument of the case, Mr. S. H. Thurman, assistant prosecutor, alluded to the case as "the most remarkable case ever tried in this territory, and the many times it has been brought before the tribunals"—at which point he was interrupted by counsel for defense, who ob-

jected and excepted to the remark about the many times it had been before the tribunals. Thereupon Mr. Thurman said: "I withdraw the remark," and the court said to the jury: "The case should be tried upon the evidence, The jury understand that they are not to consider it with respect to any previous trial of the case, but only on the evidence of this trial."

The defendant claims that the remark of the learned prosecutor comes within par. 35, of the Laws of 1884, p. 125-126, which is as follows:

"The granting of a new trial places the parties in the same position as if no trial had been had. All the testimony must be produced anew, and the former verdict cannot be used or referred to either in evidence or in argument, or be pleaded in bar of any conviction which might have been had under the indictment."

We think the remark of counsel and the ruling of the court upon it is clearly governed by the case of the *United States* v. *Musser*, decided at the June Term, 1885, and that there was no error committed. We also think the defendant stands in no position to complain of the remark. Throughout the case the record discloses that reference was made to the former trials in the examination and cross-examination of witnesses by defendant: See record, testimony of A. J. Moore, George B. Campbell and others.

IV. The other matters urged as error are immaterial, and immaterial errors that do not prejudice are to be disregarded: *State* v. *Berryman*, 8 Nev., 370; *People* v. *Brotherton*, 47 Cal., 388. We are satisfied, however, that no error was committed. The charges of the court to which no exceptions are taken, when considered in connection with the errors alleged, indicates that the cause of the defendant was not prejudiced by any rulings of the court. He had a fair and impartial trial and was justly convicted. We have carefully considered all the evidence, and we are convinced that no injustice has been done the defendant. The crime as alleged in the indictment was fully proven by the testimony. The judgment of the court below must be affirmed.

ZANE, C. J., and BOREMAN, J., concurred.