[No. 643.  Decided April 17, 1893.]

ANNIE SEARS AND FRANK SEARS, *Respondents*, v. SEATTLE CONSOLIDATED STREET RAILWAY COMPANY, *Appellant.*

CARRIERS — INJURY TO PASSENGER — EVIDENCE — ARGUMENT OF COUNSEL — NEGLIGENCE — INSTRUCTIONS — DAMAGES.

In an action for injuries received by a passenger as the result of a collision between an electric car and a wagon, where a witness has already testified that the car was running at the rate of about twelve miles an hour; that the wagon on the track was in plain view for a distance of four hundred feet; that the motorman commenced ringing the bell as a warning of his approach at about that distance from the wagon; that the man in the wagon made no attempt to get off the track until the car was pretty close to him, and that when the motorman found that the wagon was not going to get out of the way in time, he made every effort possible to stop the car, but that he was then within a hundred feet of the wagon, there is no error in permitting the witness, in answer to the question, "What was there, if anything, to prevent the motorman stopping the car and applying the brakes a long time before he did?" to testify that "He was running at too high speed to stop it in that distance."

The general rule of evidence that witnesses may not give opinions as to matters of fact does not preclude the evidence of common observers, who may state the results of their observations in regard to ordinary appearances and conditions of things which cannot be produced to a jury exactly as they were observed by the witness at the time.

Where the evidence, in an action for injuries as the result of negligence in the operation of an electric car, shows that the motorman in charge of the car at the time was discharged about three weeks later, but does not show the reason of his discharge, it is not improper argument for counsel for plaintiff to draw the inference from such fact and argue it to the jury, that the discharge of the motorman was on account of his carelessness at the time of the accident.

The fact that the testimony upon which the argument of counsel was based was incompetent cannot be raised for the first time in the supreme court, but the testimony should have been objected to when offered.

Where error is committed in permitting plaintiffs to ask a witness a question with a view to his impeachment, the error is harmless

where the witness denies the imputed declarations and the testimony of the impeaching witness is subsequently stricken out by the court on motion of the defendant.

An instruction is not erroneous which charges a jury that a defendant is bound to exercise the highest degree of care, prudence and caution in the running and operating of its cars so as to prevent injury to its passengers, as such instruction means simply the highest degree of practicable care and prudence in conducting that particular business.

Where a motorman operating a car sees that the driver of a wagon in front of him on the track does not look back, nor pay any attention to the ringing of the bell, nor increase his rate of speed, nor attempt to leave the track, it is the duty of the motorman to bring his car under control, and, if necessary to avoid a collision, to stop his car; and the negligence of the driver on the wagon, in contributing to the injury received by a passenger on the car, affords no defense to the carrier.

A verdict for $15,000 is not excessive in an action for injuries due to defendant's negligence, when the evidence shows that plaintiff, at the time of the accident, was a strong, healthy woman, of the age of thirty years; that she was industrious, and had been making fifty dollars per month, in addition to looking after household duties; that she has lost the use of her lower limbs by reason of paralysis, as a result of her injuries, and that she will be a helpless invalid during the remainder of her life.

(STILES and HOYT, JJ., dissent.)

*Appeal from Superior Court, King County.*

*Wiley, Scott & Bostwick,* for appellant.
*Thompson, Edsen & Humphries,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—The appellant owns and operates lines of street railways in the city of Seattle, one of which has its terminus at Fremont, a suburban village some distance from the main portion of the city, and situated at the north end of Lake Union. It is known as the Fremont line, and connects with another line of street railway which extends to Green Lake, in the northern portion of the city. On September 16, 1891, the respondent Annie Sears entered

upon one of the cars of the appellant to go to Green Lake. The motive power used upon the said railway is electricity, and the car upon which the respondent became a passenger at the time above mentioned was what is called an "open car." Before reaching Fremont, and while the car upon which Mrs. Sears was riding was going down a grade on Roland street, it collided with a wagon which was upon appellant's track and going in the same direction, ran off the track, and turned to the left, and ran across the street to the verge of an embankment, which was sixteen feet from the left, or west, rail of the railway track. The respondent was seated on the right hand side of the car, and when she saw that the car was leaving the track she became frightened and rose up from her seat and took hold of the post supporting the roof of the car with her right hand to steady herself, and endeavored to jump from the car. In so doing she struck upon her feet, but was thrown down upon her back close to the left hand side of the track, and thereby received a serious injury. Nearly all of the other passengers leaped from the car at about the same time, but neither they nor the one or two persons who remained in the car were in any wise injured. The respondents, who are husband and wife, instituted this action to recover damages for the injury so received by said Annie Sears, and alleged in their complaint that said injury was caused by the negligence of the servants and employés of appellant in the management of its car. The defendant, in its answer, denied that the alleged injury was caused by any negligence or carelessness on its part, and affirmatively alleged that if the said Annie Sears sustained the injury mentioned in the complaint, it was caused wholly by her own carelessness and negligence. There was a verdict and judgment for plaintiffs, and the defendant brings the case here for review.

The first error assigned by the appellant is, that the trial

court, over the objection of appellant, wrongfully permitted a witness for plaintiffs, Mr. Eck, to answer the question, "What was there, if anything, to prevent him (the motorman) stopping the car and applying the brakes a long time before he did?" The witness answered, "He was running at too high speed to stop it in that distance."

The learned counsel for the appellant insists that this was, in effect, permitting the witness to give his opinion to the jury upon the question, whether or not the defendant was negligent in the management of its car. The witness had already testified that the car was running at the rate of about twelve miles an hour; that the wagon on the track was in plain view for a distance of four hundred feet; that the motorman commenced ringing the bell as a warning of his approach at about that distance from the wagon, and rang it continuously thereafter; that the man in the wagon made no attempt to get off the track until the car was pretty close to him, and that when the motorman found that the wagon was not going to get out of the way in time, he made every effort possible to stop the car, but that he was then within a hundred feet or more of the wagon. Under these circumstances, we think it was not error to overrule the objection to the question, even upon the theory of the appellant, that the testimony given in response thereto was the expression of the opinion of the witness, and not the statement of a fact within his own knowledge.

It is a general rule of evidence that witnesses may not give opinions as to matters of fact which the court or jury are ultimately to determine. But this rule is not without exception. And the exception is not confined to the evidence of experts who may give opinions on questions requiring special skill, knowledge or learning, but includes the evidence of common observers who may state the results of their observations in regard to ordinary appear-

ances and conditions of things which cannot be produced to a jury exactly as they were observed by the witness at the time. Non-expert witnesses who have had opportunities to observe, and who have actually observed the demeanor, actions and appearance of a particular individual are competent to express an opinion upon the question whether such person was sane or insane. And every person of ordinary understanding and intelligence is competent to give an opinion as to the identity of persons or things; as to whether another appeared to be sick or suffering from pain; and as to the direction from which a blow was delivered which produced a wound upon the person of another. *People v. Hopt*, 4 Utah, 247 (9 Pac. Rep. 407.)

Of course the weight of such testimony depends upon the thoroughness of the observation of the witness; and whether he has sufficiently observed and considered the particular fact or matter under consideration to enable him to form an opinion in respect thereto, is a question which, if raised, is to be determined by the court, by the application of the same rule which governs in ascertaining the qualifications of experts. In *People v. Hopt*, *supra*, this question is very elaborately and satisfactorily discussed, and many cases cited showing particular instances in which non-experts have been allowed to express opinions. And the supreme court of Utah, in delivering the opinion in that case said:

"The admissibility of the evidence rests upon three necessary conditions—(1) That the witness detail to the jury, so far as he is able, the facts and circumstances upon which his opinion is based, in order that the jury may have some basis by which to judge of the value of the opinion; (2) that the subject matter to which the testimony relates cannot be reproduced and described to the jury precisely as it appeared to the witness at the time; and (3) that the facts upon which the witness is called upon to express

his opinion are such as men in general are capable of comprehending and understanding."

We think the rule there laid down is clearly deducible from the authorities, and that, tested by it, there was no error in the ruling of the court upon the point in question. The witness in this case expressed his opinion as a conclusion of fact based upon the observation made by him, at the time of the accident, as to the rate of speed of the car and the exertions made by the motorman to stop it; and it seems to us that the testimony is clearly embraced within the rule above stated.

On the trial of this cause it was shown, upon the cross-examination of the motorman in charge of the car at the time in question, that he was discharged by the railway company about three weeks after the casualty occurred, but no testimony was adduced showing why he was so discharged. Counsel for the respondents, in alluding to the fact in his address to the jury, remarked, among other things:

"Mr. Silverthorn states that he did his whole duty; but that, notwithstanding that, the company discharged him. Gentlemen, he did not do his duty, and the company discharged him on account of his carelessness and incompetency at the time of the accident."

Counsel for the appellant objected to the remarks so made, on the ground that there was no evidence that the man was discharged on account of this accident. The counsel for the respondent then admitted that there was no such testimony, but insisted that his argument was proper upon the evidence before the jury. The judge also stated that there was no evidence that the motorman was discharged on account of the accident, but further remarked that:

"The court will allow the utmost freedom in the argument of the case, and counsel have a right to argue what

he may deem the testimony may prove, and draw such inferences from it as he may see fit.   It is for the jury to determine what the facts are.   The court cannot indicate what the argument shall be.   The court bears the counsel out in saying there was no testimony that he was discharged in consequence of it, but that he was discharged two or three weeks afterwards; but why he was discharged I believe is a proper matter for comment to the jury.''

The learned counsel for the appellant excepted to the ruling of the court, and now contends that the same was erroneous and prejudicial to appellant.   But we think the appellant is not entitled to a judgment of reversal on that ground.   It is the duty of the court, in all cases, to restrict the argument of counsel to the facts in evidence, and not to permit the opposite party to be prejudiced by any statement of facts not a part of the evidence.   But counsel must be allowed some latitude in the discussion of their causes before the jury, and if they are not permitted to draw inferences or conclusions from the particular facts in evidence it would be impossible for them to make an argument at all.   The mere recital of facts already before the jury is not an argument.   There must be some reason offered for the purpose of convincing the mind, some inference drawn from facts established or claimed to exist, in order to constitute an argument.   But counsel cannot be compelled by the court to reason logically or to draw correct inferences from given facts; and if they err in these respects it is no ground for a new trial.   *Proctor v. De Camp*, 83 Ind. 559.   See, also, *Hinton v. Cream City R. R. Co.*, 65 Wis. 323 (27 N. W. Rep. 147); *Scott v. Chicago, etc., Ry. Co.*, 68 Iowa, 362 (24 N. W. Rep. 584); *Dowdell v. Wilcox*, 64 Iowa, 721 (21 N. W. Rep. 147); *Columbia, etc., R. R. Co. v. Hawthorne*, 3 Wash. T. 353 (19 Pac. Rep. 25); *Skagit Railway & Lumber Co. v. Cole*, 2 Wash. 74 (25 Pac. Rep. 1077).

In this case, although counsel may have drawn an unwar-

ranted conclusion from the fact that the manager of the car was discharged some time after the accident, still we think he had a right to comment on the evidence, and to draw such inferences from it as he deemed fit and proper, and the court properly refused to undertake to prevent him from so doing.

It is claimed, however, by the appellant, that the testimony upon which the remarks of the respondents' counsel were based — that the motorman was discharged — was incompetent, and therefore prejudicial to the appellant. However that may be, it is not shown by the record that the testimony was objected to when offered, and the objection cannot be here made for the first time.   It seems altogether probable that if this testimony had been objected to in the trial court, it would have been excluded, for the jury were specially instructed that the fact that the motorman was discharged raised no presumption of negligence on the part of the railway company.   And this instruction, which we cannot presume was disregarded by the jury, plainly indicated to them that the inference drawn from the testimony by counsel for the respondents, and which he sought to impress upon their minds in his closing argument, was not warranted and should not be entertained by them.

Upon the cross examination of the witness Silverthorn, the motorman in charge of the car, counsel for the respondents, with a view to impeach him, asked him if he did not make certain statements to one Eck in a conversation with the latter at Fremont, soon after the accident.   The testimony was objected to by counsel for the appellant, and the objection overruled by the court.   But, as the witness denied making any of the declarations imputed to him, and as all of the testimony of Eck in reference to the conversation was stricken out by the court, on motion of counsel for the appellant, we fail to see wherein the appellant was prejudiced by the action of the court in that regard.

The next alleged error relates to the instructions given to the jury. It is contended that the court erred in charging the jury that the defendant was bound to the exercise of the highest degree of care, prudence and caution in the running and operating of its cars, so as to prevent injury to its passengers. And it is claimed by the appellant that this instruction, in effect, informed the jury that the appellant was an insurer of the lives and limbs of its passengers, and would be responsible for an injury to one of its passengers, even though it had used all the care and prudence which it was possible to use under the circumstances. But we do not think that the instruction, especially when applied to the facts and circumstances of the case, is fairly susceptible of the construction placed upon it by counsel for the appellant. If the appellant used all the care and prudence which it was possible to use under the circumstances, then, in the language of the court, it used the highest degree of care, prudence and caution. The highest degree of care, prudence and caution *in running and operating street cars* so as to prevent injury to passengers, cannot be said to mean such a degree of care as will absolutely prevent injury, or such care as is inconsistent with that mode of conveyance, but means simply the highest degree of practicable care and prudence in conducting that particular business. Instructions similar to the above have frequently been approved by the courts. See *Topeka City Ry. Co. v. Higgs*, 38 Kan. 375 (16 Pac. Rep. 667); *Sales v. Western Stage Co.*, 4 Iowa, 547; *Fairchild v. California Stage Co.*, 13 Cal. 599; *Stokes v. Saltonstall*, 13 Pet. 181; *Dougherty v. Missouri Railroad Co.*, 97 Mo. 647 (8 S.W. Rep. 900); *Coddington v. Brooklyn, etc., R. R. Co.*, 102 N. Y. 66 (5 N. E. Rep. 797); *Furnish v. Mo. Pac. Ry. Co.*, 102 Mo. 438 (13 S. W. Rep. 1044).

But the court also instructed the jury, at the request of appellant, as follows:

"You are instructed, while the defendant, as a common carrier of passengers, is held to the highest degree of care and prudence which is consistent with the practical operation of its cars and transaction of its business, still it is not an insurer of the lives and limbs of its passengers."

The appellant, of course, makes no complaint against this latter instruction, but insists that the two are inconsistent with each other, and hence misleading and erroneous. But we cannot agree with counsel's contention. The latter modifies, or rather explains, the meaning of the former, but we cannot see that it in any wise contradicts it.

In our opinion the court properly refused to give to the jury instructions Nos. 6 and 7, requested by the appellant. They were predicated upon the idea that because the man in charge of the wagon failed to drive off the track, as he should have done, and as the motorman expected, in time to avoid a collision, and was thus in some measure to blame for the accident, the appellant should not be held responsible. No doubt the instructions requested would have been proper in an action against the appellant by the driver of the wagon for damages to him caused by the collision. But in this case, the respondents had no control over the driver of the wagon, and no contractual relation whatever existed between them and him, and they were in no way responsible for his actions.

"It is no defense for a negligent carrier, as against his passenger, that the negligence or trespass of a third party contributed to the injury, although the latter acted independently of the carrier." 2 Shear. & R., Neg. (4th ed.), § 502; *Eaton v. Boston, etc., R. R. Co.*, 11 Allen, 500; *Carpenter v. Boston, etc., R. R. Co.*, 97 N. Y. 494; *Little v. Hackett*, 116 U. S. 366 (6 Sup. Ct. Rep. 391).

The questions for the jury to determine were, was the appellant guilty of negligence in the management of its car, and, if so, was the injury sustained by the respondent Mrs. Sears solely the result of such negligence? The jury

answered these questions in the affirmative, and a careful examination of the evidence convinces us that they arrived at a correct conclusion.    No reason is given for not stopping the car before it came in contact with the wagon, except that the man in charge thought that the wagon would be removed from the track before he reached it.    And yet this same man testified that the man in charge of the wagon made no attempt to leave the track until the car was so near him that a collision could not be avoided by putting on the brakes or reversing the motion of the wheels of the car.    It seems plain to us that when the motorman saw that the person on the wagon neither looked back nor paid any attention to the ringing of the bell, nor increased his rate of speed, nor attempted to leave the track, it was his duty to bring his car under control, and even to stop, if necessary, to avoid a collision. 2 Shear. & R., Neg., § 483. By the exercise of reasonable care and diligence on the part of appellant's employé, the injury might have been avoided, and by failing to exercise such care and diligence he failed to discharge his duty to the respondent Mrs. Sears as a passenger.    The wagon was seen by him at a distance of at least four hundred feet, and no valid reason is shown why the car could not have been stopped within half that distance, and the motorman himself says he would have stopped if he had known the wagon was going to remain on the track.

The jury in this case assessed the damages at $15,000, which sum appellant claims is excessive.    The amount of damages, in cases like this, to which a party is entitled is a matter to be determined by the jury from all the facts and circumstances, and their verdict should not be disturbed on the ground of excessiveness unless the amount is so large as to indicate passion or prejudice.

The sum awarded by the jury is certainly a large one, but we are unable to discover that it was the result of

passion or prejudice, or that it is even greatly in excess
of a fair compensation for the injury received.    The tes-
timony shows that Mrs. Sears, at the time of the accident,
was a strong, healthy woman, of the age of thirty years;
that she was industrious, and, in addition to looking after
her own household duties, had been making fifty dollars
per month.    The testimony further shows that her injury
is permanent; that she has lost the use of her lower limbs
by reason of paralysis ·resulting from a concussion of the
spinal cord, and that she will be a helpless invalid during
the remainder of her life.    These facts were all before the
jury, and they have, so far as we can see, exercised their
best judgment as to the amount of compensation she ought
to receive; and we perceive no legal grounds for disturb-
ing the verdict.    *Gulf, etc., Ry. Co. v. Dorsey*, 66 Tex.
148 (18. S. W. Rep. 444);· *Robinson v. Marino*, 3 Wash.
434 (28 Pac. Rep. 752); *Phelps v. Steamship City of
Panama*, 1 Wash. T. 518; *Columbia, etc., R. R. Co., v.
Hawthorne*, 3 Wash. T. 353 (19 Pac. Rep. 25).

The judgment of the court below is affirmed.

DUNBAR, C. J., and SCOTT, J., concur.

STILES, J. (*dissenting*).—I desire simply to call atten-
tion to the instructions requested by the defendant, num-
bers six and seven.

The court in this case gave a series of instructions,
requested by the plaintiff, which, from beginning to end,
were argumentative, and wholly devoted to the suggestion
of facts necessary to be found to justify the jury in finding
for the plaintiffs, and failed to state any ground which
would be sufficient to excuse the defendant from the charge
of negligence.    In general terms the jury were told that
the acts of the defendant must have been negligent in order
to entitle the plaintiffs to recover, but nowhere was there
any definition of negligence.    Thus the jury were left

wholly to the exercise of their judgment as to the law of negligence, and were told in plain terms that if certain facts claimed by the plaintiffs to have been proven were found by them, they should find for the plaintiffs.

Over against this, the defendant, in order to have its case presented upon an equal footing before the jury, asked the following instructions: .

"6. If the jury believe from the evidence that the motorman was properly operating his car, and sounded his gong in sufficient time to lead a reasonably prudent person to believe that the driver of the wagon would leave the track, and that this gong or bell was in good order, and of the kind usually in use on street cars to give warning to persons on the track; and the motorman believed that the driver of the wagon heard the gong and believed, or had good reason to believe, that the driver of the wagon would leave the track; and that as soon as the motorman ascertained that the driver of the wagon would not leave the track, he applied the brakes and did all that could be done to stop the car, then the defendant is not guilty of negligence.

"7. The operators of street cars have a right to presume that persons driving on the track will use ordinary care and precaution to prevent accidents by driving off the track in order to let cars pass them, especially when the ordinary warning signals are given; and in this case, if you believe from the evidence that such signals were given in sufficient time to lead an ordinarily prudent person to believe that such warning was heard by the driver of the wagon, and that the driver, if he had heard the warning, had sufficient time to leave the track in order to prevent a collision, then the defendant is not guilty of negligence, and your verdict should be for the defendant."

In my judgment these two charges should have been given. The plan of substantially narrating all the facts in the case to the jury, and telling them if they find those facts to be true they should find one way or the other, may, or may not, be a proper method of charging the jury upon the law. But the court in this case having adopted that

plan in giving the plaintiff's side of the case should have followed it up by putting the defendant's side in the same position before the jury.

The substance of the requests, as above quoted, was that the operator of a street car has a right to presume that the driver of a wagon will, upon being sufficiently warned, leave the track clear for the car to pass; a right, the existence of which cannot be doubted, unless street car operators are to be held as insurers of their passengers against any possibility of accident by collision, a position which the court has taken particular pains to show was not taken by the court below, as it could not be. Taking the charge as given as a whole, it amounted to nothing but a presentation of the plaintiffs' case, and all the facts thereof in detail, with a few disconnected general statements of law requested by the defendant, and was in no sense a fair or impartial charge to·a jury. For these reasons the judgment should have been reversed.

HOYT, J., concurs.