(No. 5338. Decided May 22, 1905.)

HERBERT L. WILLIAMS, *Respondent,* v. SPOKANE FALLS &
NORTHERN RAILWAY COMPANY, *Appellant.*[1]

CARRIERS — NEGLIGENCE — PRESUMPTION FROM FACT OF COLLISION.
There is a presumption of negligence upon the part of a railroad
company from the fact that a passenger's injury was due to an un-
explained disconnection of the coupler in switching cars on a side
track, causing a collision; since evidence that the injury was due
to the operation of the road makes out a *prima facie* case.

SAME—COLLISION—DISCONNECTION OF COUPLER—EVIDENCE OF NEG-
LIGENCE—SUFFICIENCY. In an action for personal injuries sustained
through the colliding of cars being switched on a side track with a
postal car standing thereon, there is sufficient evidence of defend-
ant's negligence, where it appears that the accident was due to the
fact that the cars became detached from the switch engine, and that
the coupling had come apart several times before, to the knowledge
of the company's servants, who threw off safety chains simply for
the purpose of expediting the business.

TRIAL—ARGUMENT OF COUNSEL—READING LAW TO JURY. It is not
prejudicial error that counsel in argument to the jury was per-
mitted to read from law books, when the same was in accord with
the law given by the court to the jury, and the jury was not misled
nor the party prejudiced thereby.

CARRIERS—DUTY TO PASSENGERS—DEGREE OF CARE—INSTRUCTIONS.
In an action by a passenger against a railroad company for injuries
sustained in a collision, it is proper to instruct that the railroad
company owed the duty to carry the plaintiff safely so far as human
care and skill would enable it to be done, and to use the utmost
vigilance and exercise the highest degree of prudence and caution
in running its trains so as to prevent injury; and a qualification
respecting the practical operation of the business is not essential.

SAME—CUSTOM OF OTHER ROADS. In such a case the duty of the
defendant is not measured by the degree of care customarily exer-
cised by other roads.

Appeal from a judgment of the superior court for Spo-
kane county, Richardson, J., entered May 27, 1904, upon
the verdict of a jury rendered in favor of the plaintiff, for
personal injuries sustained by a mail clerk in a collision.
Affirmed.

[1] Reported in 80 Pac. 1100.

*M. J. Gordon* and *C. A. Murray,* for appellant, contended, among other things, that counsel should not be permitted to read to the jury from law books. *Johnson v. Culver,* 116 Ind. 278, 19 N. E. 129; *Tuller v. Talbot,* 23 Ill. 357, 76 Am. Dec. 695; *Baker v. Madison,* 62 Wis. 137, 22 N. W. 141, 583; *People v. Anderson,* 44 Cal. 65; *Mullen v. Reinig,* 72 Wis. 388, 39 N. W. 861; *Steffenson v. Chicago etc. R. Co.,* 48 Minn. 285, 51 N. W. 610; *Baldwin's Appeal,* 44 Conn. 37; *Phoenix Ins. Co. v. Allen,* 11 Mich. 501, 83 Am. Dec. 756; *Sullivan v. Royer,* 72 Cal. 248, 13 Pac. 655, 1 Am. St. 51; *Sprague v. Craig,* 51 Ill. 288; *Ordway v. Haynes,* 50 N. H. 159; *Chicago v. McGiven,* 78 Ill. 347; *Porter v. Choen,* 60 Ind. 338; *Williams v. Brooklyn Elev. R. Co.,* 126 N. Y. 96, 26 N. E. 1048; *Scott v. Scott,* 124 Ind. 66, 24 N. E. 666; *Evansville v. Wilter,* 86 Ind. 414; *Cory v. Silcox,* 6 Ind. 39; Const., art 4, § 16. A carrier is bound to exercise only the highest degree of care consistent with the practical conduct of its business, and such as is customary under similar circumstances. *Johnson v. Seattle Electric Co.,* 35 Wash. 382, 77 Pac. 677; *Hoffman v. American Foundry Co.,* 18 Wash. 287, 51 Pac. 385; *Hawkins v. Front St. Cable R. Co.,* 3 Wash. 592, 28 Pac. 1021, 28 Am. St. 72, 16 L. R. A. 808; *Allen v. Northern Pac. R. Co.,* 35 Wash. 221, 77 Pac. 204; 4 Elliott, Railroads, § 1585; *Furnish v. Missouri Pac. R. Co.,* 102 Mo. 438, 13 S. W. 1044, 22 Am. St. 781; *Oviatt v. Dakota Cent. R. Co.,* 43 Minn. 300, 45 N. W. 436; *Louisville City R. Co. v. Weams,* 80 Ky. 420; *Arkansas etc. R. Co. v. Canman,* 52 Ark. 517, 13 S. W. 280.

*Graves & Graves,* for respondent, to the point that defendant owed plaintiff the legal duty of exercising the highest degree of care and diligence, cited: *Northern Pac. R. Co. v. Hess,* 2 Wash. 383, 26 Pac. 866; *Sears v. Seattle Consol. St. R. Co.,* 6 Wash. 227, 33 Pac. 389, 1081; *Cogswell v. West St. R. Co.,* 5 Wash. 46, 31 Pac. 411; *Clukey v. Se-*

*attle Electric Co.*, 27 Wash. 70, 67 Pac. 379; Cooley, Torts, 768, 769; *Stokes v. Saltonstall,* 13 Pet. 181; *Maverick v. Eighth Ave. R. Co.,* 36 N. Y. 378; *Laing v. Colder,* 8 Barr (Pa.) 479; *Philadelphia etc. R. Co. v. Anderson,* 96 Pa. St. 351; *Taylor v. Grand Trunk R. Co.,* 48 N. H. 304; *Dertwort v. Loomer,* 21 Conn. 244; *Dirst v. Morris,* 14 How. 484; *Steamboat New World v. King,* 16 How. 469; *Pennsylvania R. Co. v. Roy,* 102 U. S. 451; *Topeka City R. Co. v. Higgs,* 38 Kan. 375, 16 Pac. 667, 5 Am. St. 754; *Ogilivie v. Washburn,* 4 Iowa 548; *Canfield v. Bates,* 13 Cal. 606; *Dougherty v. Missouri R. Co.,* 97 Mo. 647, 8 S. W. 900, 11 S. W. 251; *Coddington v. Brooklyn Crosstown R. Co.,* 102 N. Y. 66, 5 N. E. 797; *Ingalls v. Bills,* 9 Met. 1, 43 Am. Dec. 346; *Wilson v. Northern Pac. R. Co.,* 26 Minn. 278, 3 N. W. 333, 37 Am. Rep. 410; *Louisville etc. R. Co. v. Thompson,* 107 Ind. 442, 8 N. E. 18, 9 N. E. 357, 57 Am. Rep. 120; *Louisville etc. R. Co. v. Retter's Adm'r,* 85 Ky. 368, 3 S. W. 591; *Southern R. Co. v. Watson,* 110 Ga. 681, 36 S. E. 209; *Hegeman v. Western R. Co.,* 13 N. Y. 1; *Caldwell v. New Jersey S. S. Co.,* 47 N. Y. 282; *New Jersey R. Co. v. Kennard,* 21 Pa. St. 203; *Reynolds v. Richmond etc. R. Co.,* 92 Va. 400, 23 S. E. 770; *Southern Kansas R. Co. v. Walsh,* 45 Kan. 653, 26 Pac. 45; *Smith v. St. Paul City R. Co.,* 32 Minn. 1, 18 N. W. 827, 50 Am. Rep. 550; *Treadwell v. Whittier,* 80 Cal. 574, 22 Pac. 266, 13 Am. St. 175, 5 L. R. A. 498; *Spellman v. Lincoln Rapid Transit Co.,* 36 Neb. 890, 55 N. W. 270, 38 Am. St. 753, 20 L. R. A. 316; *Denver Tramway Co. v. Reid,* 4 Colo. App. 53, 35 Pac. 269; *Fox v. Philadelphia,* 208 Pa. St. 127, 57 Atl. 356, 65 L. R. A. 214. An injury resulting from an act in the operation of the train raises a presumption of negligence. The circumstances surrounding the accident, considered in connection with the legal duty the defendant owed plaintiff, make out a case of negligence under the doctrine of *res ipsa loquitur* which, unless rebutted by defendant to the satisfaction of the jury, render it liable to

plaintiff. 3 Thompson, Commentaries on the Law of Negligence, §§ 2757-2761, 2830; 2 Shearman & Red., Negligence, §§ 516, 517; 6 Cyc. 628-632; *Stokes v. Saltonstall, supra;* *Railroad Co. v. Pollard,* 22 Wall. 341, 22 L. Ed. 877; *Gleeson v. Virginia Midland R. Co.,* 140 U. S. 435, 11 Sup. Ct. 859; 3 Rose's Notes, U. S. Reports, pp. 812, 814; *Whitney v. New York R. Co.,* 102 Fed. 850; *Texas etc. R. Co. v. Gardner,* 114 Fed. 186; 9 Century Digest, cols. 1228-1234; *Rintoul v. New York Cent. R. Co.,* 17 Fed. 905; *Mullen v. St. John,* 57 N. Y. 567, 15 Am. Rep. 530; *Houston v. Brush,* 66 Vt. 331, 29 Atl. 380; *Klepsch v. Donald,* 8 Wash. 162, 35 Pac. 621; *Rose v. Stephens etc. Transp. Co.,* 11 Fed. 438; *Peer v. Ryan,* 54 Mich. 224, 19 N. W. 961; *St. Louis etc. R. Co. v. Hopkins,* 54 Ark. 209, 15 S. W. 610; *Dixon v. Pluns,* 98 Cal. 384, 33 Pac. 268, 35 Am. St. 180; *Morris v. Strobel & Wilken Co.,* 30 N. Y. Supp. 571; *Reynolds v. Van Beuren,* 31 N. Y. Supp. 827; *Mulcairns v. Janesville,* 67 Wis. 24, 29 N. W. 565. When a verdict which is clearly right is returned, error in giving or refusing instructions is harmless. *Carroll v. Centralia Water Co.,* 5 Wash. 613, 32 Pac. 609, 33 Pac. 431; *Davis v. Gilliam,* 14 Wash. 206, 44 Pac. 119; *Hardin v. Mullen,* 16 Wash. 647, 48 Pac. 349; *Kirkland Land & Imp. Co. v. Jones,* 18 Wash. 407, 51 Pac. 1043; *Keating v. Pacific Steam Whaling Co.,* 21 Wash. 415, 58 Pac. 224; *Gray v. Washington Water Power Co.,* 30 Wash. 665, 71 Pac. 206; *Goldthorpe v. Clark-Nickerson Lumber Co.,* 31 Wash. 467, 71 Pac. 1091; *Chicago etc. R. Co. v. Ross,* 112 U. S. 377, 5 Sup. Ct. 184; *Pierce v. Clavin,* 82 Fed. 550; *St. Louis etc. R. Co. v. O'Loughlin,* 49 Fed. 440; *Choctaw etc. R. Co. v. Holloway,* 114 Fed. 458; *Id.,* 191 U. S. 334, 24 Sup. Ct. 102; *Portland Gold Min. Co. v. Flaherty,* 111 Fed. 312; *Johnson v. Northern Pac. R. Co.,* 1 N. D. 354, 48 N. W. 227; *New York etc. R. Co. v. O'Leary,* 93 Fed. 737; *Mexican Cent. R. Co. v. Lauricella,* 87 Tex. 277, 28 S. W. 277, 47 Am. St. 103; *Houston Elec.*

*St. R. Co. v. Elvis,* 31 Tex. Civ. App. 280, 72 S. W. 216;
*Chicago etc. R. Co. v. Dickson,* 63 Ill. 151, 14 Am. Rep.
114; *Chicago etc. R. Co. v. Murphy,* 198 Ill. 462, 64 N.
E. 1011; *Beardstown v. Clark,* 104 Ill. App. 568; *Beard
v. Skeldon,* 113 Ill. 584; *Richmond R. & Elec. Co. v.
Garthright,* 92 Va. 627, 24 S. E. 267, 53 Am. St. 839,
32 L. R. A. 220; *Atchinson etc. R. Co. v. Miller,* 39 Kan.
419, 18 Pac. 486; *Beauvais v. St. Louis,* 169 Mo. 500, 69
S. W. 1043; *Zellars v. Missouri Water & Light Co.,* 92
Mo. App. 107.

Dunbar, J.—Appellant was a railway postal clerk in the
service of the United States. On August 15, 1903, he was
one of the clerks in charge of a postal car attached to a
train of the appellant, running between Spokane and North-
port. The car on which he was occupied was, pursuant to
the usual custom, detached from the train at the latter point,
and set in on a side track, to be returned to Spokane on the
day following. Northport is a terminal point, and trains
are made up at that point for other destinations. The sid-
ing upon which this postal car was placed was three hun-
dred feet in length, and an even grade. A switch engine,
engaged in making up a passenger train, entered upon this
track with a baggage car and two coaches. For some cause,
unknown and unexplained by the testimony, the coupler
which connected the bagagge car with the tender of the
locomotive parted, and the three cars ran along the siding,
and collided with the postal car, which contained the re-
spondent, injuring him most seriously. This action was
brought to recover damages for the injuries so sustained, and
resulted in a verdict in respondent's favor. Motion for new
trial was duly entered and overruled, and judgment rendered
upon the verdict, from which judgment this appeal is taken.

It is conceded that the respondent was performing his
duty on the car, and it is also conceded that the rules of

law applying to passengers on a railroad car apply to him. At the conclusion of the testimony for both respondent and appellant, the appellant requested the court to charge the jury to find for the defendant. This request was overruled, and upon the action of the court in this respect is based the first assignment of error, the contention being that there was no proof that there was any negligence on the part of the appellant; that there is no allegation that there was any defect in the construction of the cars, or in their equipment, or that they were in a defective or unsafe condition in any respect at the time of the happening of the accident; and that no legal presumption of negligence arose casting upon appellant the burden of disproving it.

The particular negligence alleged is that, while respondent was in the discharge of his duties in a postal car, on a siding at Northport, the appellant's servants and employees negligently ran and propelled against said mail car other cars, by means of a locomotive operated by it, and said mail car was struck by said cars, propelled with great force and violence, pushing it along for a distance, and derailing it, thereby throwing respondent down. The answer denied any negligence, and it is contended that there was no negligence shown. *Hawkins v. Front St. Cable R. Co.*, 3 Wash. 592, 28 Pac. 1021, 28 Am. St. 72, 16 L. R. A. 808; and *Allen v. Northern Pac. R. Co.*, 35 Wash. 221, 77 Pac. 204, 66 L. R. A. 804, are relied upon to sustain the appellant's contention.

In *Hawkins v. Front St. Cable R. Co., supra,* this court held that the following instruction, "It is the law that where a passenger being carried on a train is injured without fault of his own, there is legal presumption of negligence, casting upon the carrier the burden of disproving it," constituted reversible error as being too broad a statement of the responsibility of the carrier. There, it will be observed, the instruction overruled had no limitations whatever, and, under that instruction, if the passenger had been injured by some

unavoidable accident disconnected entirely from the railroad
company, such as an injury resulting from the discharge of
a firearm by some one in the car, or through the window
by some one outside of the car, the company would have
been held responsible.  So that it is not enough that the
passenger is injured without fault of his own, but the in-
jury must be connected in some way with the operation of
the road; and, when the injury is so connected, we think,
under the overwhelming weight of authority, that a *prima
facie* case of negligence is made out by the plaintiff, and
that the duty devolves upon the company to establish a
want of negligence on its part.  And the cases cited by
this court in that case show that such was the view that
the court took of the law.

There is nothing in the case of *Allen v. Northern Pac.
R. Co., supra,* to sustain appellant's contention.  Mr. Thomp-
son, in his Commentaries on the Law of Negligence, Vol.
3, § 2754, very happily expresses the distinction which we
have sought to make.  The section is as follows:

"In every action by a passenger against a carrier to re-
cover damages predicated upon the negligence or misconduct
of the latter, the burden of proof, in the first instance, is,
of course, upon the plaintiff to connect the defendant in
some way with the injury for which he claims damages.
But when the plaintiff has sustained and discharged this
burden of proof by showing that the injury arose in conse-
quence of the failure, in some respect or other, of the car-
rier's means of transportation, or the conduct of the carrier's
servants, then, in conformity with the maxim *res ipsa loquitur,*
a presumption arises of negligence on the part of the carrier
or his servants, which, unless rebutted by him, *to the sat-
isfaction of the jury,* will authorize a verdict and judgment
against him for the resulting damages.  Stated somewhat
differently, the general rule may be said to be that where
an injury happens to the passenger in consequence of the
breaking or failure of the vehicle, roadway, or other appli-
ance owned or controlled by the carrier, and used by him
in making the transit, or in consequence of the act, omis-

sion or mistake of his servants,—the person entitled to sue for the injury makes out a *prima facie* case for damages against the carrier, by proving the contract of carriage, that the accident happened in consequence of such breaking or failure, or such act, omission or mistake of his servants, and that, in consequence of the accident, the plaintiff sustained damage."

And in § 2756, showing that the presumption arises not from the happening of the accident, but from a consideration of the cause of the accident, it is further said:

"It has been pointed out by an able judge that the presumption which arises in these cases does not arise from the mere fact of the injury, but *from a consideration of the cause of the injury.* Thus, it was said by Ruggles, J.: 'A passenger's leg is broken while on his passage in the railroad car. This mere fact is no evidence of negligence on the part of the carrier, until something further be shown. If the witness who swears to the injury testifies also that it was caused by a crash in a collision with another train of cars belonging to the same carriers, the presumption of negligence immediately arises,—not, however, from the fact that the leg was broken, but from the circumstances attending the fact.' "

And a wilderness of cases is cited to sustain the announcement of the text. The cases on this subject are collated in the Century Digest, Vol. 9, commencing on page 1235, and the doctrine is almost universally announced that the fact that an injury results from a railroad collision without any fault of the passenger is *prima facie* evidence of carelessness, negligence, or want of skill on the part of the company, and the burden is upon it to prove that the accident was not occasioned by the fault of its agents. *Goble v. Delaware etc. R. Co.,* Fed. Cas. No. 5488a; *Smith v. St. Paul City R. Co.,* 32 Minn. 1, 18 N. W. 827, 50 Am. Rep. 550; *New Orleans etc. R. Co. v. Allbritton,* 38 Miss. 242, 75 Am. Dec. 98; *Chicago City R. Co. v. Engel,* 35 Ill. App. 490; *Central Pass R. Co. v. Bishop,* 9 Ky. Law 348; *North Chicago St. R. Co. v. Cotton,* 140 Ill. 486, 29

N. E. 899, and many other cases, too numerous to cite, the circumstances of which are parallel in principle with the circumstances in this case, support the law announced. This is also in accordance with a decision made by this court in *Walker v. McNeill*, 17 Wash. 582, 50 Pac. 518, where it was said:

"Whenever a car or train leaves the track it proves that either the track or machinery or some portion thereof is not in a proper condition, or that the machinery is not properly operated."

And this is the just and equitable rule, for the cause of the accident is within the knowledge of the railroad company, while it might be a difficult matter for the plaintiff to prove what the cause of the accident was.

So far as the proof was concerned, we think, also, that there was ample proof to show negligence on the part of the appellant. There was testimony to the effect that this coupling had come apart several times before, and that it was within the knowledge of the appellant's servants that it was liable to come apart, and having that knowledge, it had no right to throw off the safety chains simply for the purpose of expediting its business to the extent of imperiling the life of the respondent. This manner of switching could only be safely done and relied upon on the supposition that the coupling could be absolutely depended upon, and the removal of the safety appliance, under such circumstances, constituted negligence on the part of the company towards its passengers. We think the court committed no error in overruling the appellant's motion for an instruction to find a verdict for the defendant.

In consideration of the fact that the amount of the judgment is not called in question, the second, third and fourth assignments of error are immaterial. The contention that the court erred in permitting respondent's counsel to read from law books, in the presence of the jury, in the course

of his argument, was decided adversely to such contention in *Gallagher v. Buckley,* 31 Wash. 380, 72 Pac. 79.

Among others, the court gave the following instruction:

"Under the allegations of the complaint and the admissions of the answer, plaintiff, when upon a mail car of the defendant as a postal clerk in the employ of the United States and in the discharge of such duties as such clerk, was a passenger and entitled to the care and caution to preserve him from injury that defendant, under the law, owes to a passenger. That duty was to carry the plaintiff safely so far as human care and skill would enable it to be done. Out of regard for human life and for the purpose of securing the utmost vigilance by carriers in protecting those who have committed themselves to its hands, the law requires the carrier to exercise the highest degree of care, prudence and caution in running and operating its cars, so as to prevent injury to its passengers. It is not sufficient that the carrier has employed the same character of appliances, has exercised the same degree of care in their inspection, has taken the usual and ordinary precautions to avoid accidents, and that its trains were operated in the same manner as is customarily and ordinarily done by other carriers under like circumstances. The carrier is bound to use such quality of appliances and to exercise such care in the use of those appliances as human foresight would suggest as a measure to protect the passengers from harm, and the carrier cannot exonerate itself from exercising this ordinary vigilance for the safety of its passengers, which the law required by showing that other carriers have customarily and ordinarily done the same thing, unless the jury find from the evidence that this manner of doing the things was such as the highest degree of care, prudence and caution required so as to prevent injury to passengers."

It is contended by the appellant that the first part of the instruction, viz., that it is the defendant's duty to carry the plaintiff safely so far as human care and skill would enable it to be done, is opposed to the doctrine laid down by this court in *Johnson v. Seattle Elec. Co.,* 35 Wash. 382, 77 Pac. 677, where it was held that an instruction to the effect that a corporation engaged in the transportation

of passengers is held by the law to the exercise of the highest degree of care in the equipment of its road and the manner of its operation—that a transportation company is not an insurer of the lives or limbs of its passengers, but the law called upon it to do whatever can be done to insure their protection while they are being transported—stated the law too broadly, this court saying that there are many things that a carrier could do which would conduce to the safety of its passengers, which it is not required to do simply because the practical prosecution of its business will not permit of it. It was, however, evidently not the intention of the court in that case to overrule the law announced in the previous case of *Northern Pac. R. Co. v. Hess,* 2 Wash. 383, 26 Pac. 866, where it was said:

"Public policy and safety require that they [the carriers] be held to the greatest care and diligence in order that the personal safety of passengers be not left to chance or the negligence of careless agents; that, although the carrier does not warrant the safety of passengers against all events, yet his undertaking and liability as to them go to the extent that he, or his agents where he acts by agents, shall, so far as human care and foresight can go, transport them safely, and observe the utmost caution characteristic of careful, prudent men;"

and in *Clukey v. Seattle Elec. Co.,* 27 Wash. 70, 67 Pac. 379, where the court sustained the following instruction:

"Common carriers in the operation and running of their cars and especially common carriers such as this owe the duty to passengers whom they carry to use the highest degree of skill, care and prudence in the running and in the operating of those cars, so as to prevent injuries to those passengers."

For these cases were discriminated in the *Johnson* case, the court holding that the expression that "the law calls upon it to do whatever can be done to insure their protection," was stronger than the expression used in the former cases. The case of *Cogswell v. West Street etc. Elec. R. Co.,* 5

Wash. 46, 31 Pac. 411, was not called to the attention of the court in the *Johnson* case, that case having decided that it was the duty of the company to exercise the highest degree of care in the transportation of passengers, the court saying: "It has long been the rule that when carriers undertake to convey persons by the powerful and dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence," citing *Philadelphia etc. R. Co. v. Derby,* 14 How. 468, 14 L. Ed. 502; *Steamboat New World v. King,* 16 How. 469, 14 L. Ed. 1019; and *Pennsylvania Co. v. Roy,* 102 U. S. 451, 26 L. Ed. 141. Neither was there cited to the court the case of *Sears v. Seattle Elec. St. R. Co.,* 6 Wash. 227, 33 Pac. 389, 1081, or the court might have thought itself justified in holding that the words "but the law calls upon it to do whatever can be done" meant only whatever could be done in the prudent operation of the road. In the *Sears* case, at page 235, it is said:

"It is contended that the court erred in charging the jury that the defendant was bound to the exercise of the highest degree of care, prudence and caution in the running and operating of its cars, so as to prevent injury to its passengers. And it is claimed by the appellant that this instruction, in effect, informed the jury that the appellant was an insurer of the lives and limbs of its passengers, and would be responsible for an injury to one of its passengers, even though it had used all the care and prudence which it was possible to use under the circumstances. But we do not think that the instruction, especially when applied to the facts and circumstances of the case, is fairly susceptible of the construction placed upon it by counsel for the appellant. If the appellant used all the care and prudence which it was possible to use under the circumstances, then, in the language of the court, it used the highest degree of care, prudence, and caution. The highest degree of care, prudence, and caution *in running and operating street cars* so as to prevent injury to passengers, cannot be said to mean such a degree of care as will absolutely prevent in-

jury, or such care as is inconsistent with that mode of conveyance, but means simply the highest degree of practicable care and prudence in conducting that particular business."

The court, in the case of *Pennsylvania Co. v. Roy*, 102 U. S. 451, 26 L. Ed. 141, cited by this court in *Cogswell v. West Street etc. Elec. R. Co., supra,* in commenting on this questions, says:

"The court only applied to a new state of facts, principles very generally recognized as fundamental in the law of passenger carriers. Those thus engaged are under an obligation, arising out of the nature of their employment, and, on grounds of public policy, vigorously enforced, to provide for the safety of passengers whom they have assumed, for hire, to carry from one place to another. In *Philadelphia & Reading Railroad Co. v. Derby* (14 How. 648), it was said that when carriers undertake to convey persons by the powerful and dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence,—that the personal safety of passengers should not be left to the sport of chance, or the negligence of careless agents. This doctrine was expressly affirmed in *Steamboat New World v. King,* 16 Id. 469."

See, also, *Stokes v. Saltonstall,* 13 Pet. 181, and *Railroad Co. v. Pollard,* 22 Wall. 241.

In fact, this is almost the universal authority. The expressions used by the courts—as far as human care and foresight can go, he must exercise the greatest possible care and diligence—extraordinary vigilance, aided by the highest skill—greatest degree of care, skill, and foresight—utmost skill and foresight — extraordinary diligence and foresight — utmost care and diligence in order to prevent injuries which human care and foresight can guard against—and words of similar import, all of them mean in effect the same as the language employed by the court in this case, viz., that the duty was to carry the plaintiff safely so far as human care and skill would enable it to be done. If it is the duty of the carrier to exercise the highest degree of care and skill, it

follows that the latter part of the instruction complained of is correct, for the highest degree of care and skill is the highest degree of care and skill which the circumstances surrounding the operation of the business will warrant, regardless of the amount of care and skill that is exercised by other carriers. And the carrier cannot escape the responsibilities for the violation of a duty which the law imposes upon him by pleading the violation of that duty by other carriers. If the custom of railroad companies was to be accepted as the measure of care, then there would be no stimulus to improve, each carrier relying, not upon its own exertions to exercise extraordinary care, but upon the custom of other carriers. In *Union Pac. R. Co. v. Hand,* 7 Kan. 380, it is pertinently said by the court:

"At the request of the plaintiff below, the court instructed the jury that, 'if the defendant could have prevented the accident by the utmost human sagacity or foresight, with respect to their track, then the defendant is liable.' This is established law. The defendant sought to have it explained to the jury by requesting the court to tell them 'that the utmost human sagacity required of the defendant did not require of the defendant to take such extraordinary measures in constructing, operating, and maintaining its railroad as are not and have not been in use in the constructing, operating, or maintaining of railroads.' This the court refused to give, and its refusal is assigned as error, and we are asked to correct it. We know of no reason peculiar to this State why human life and safety are not as valuable here as elsewhere; at any rate, it is not the province of courts to cheapen it, by construing away established principles, laid down to make life secure."

The same principle was announced in *Carlson v. Wilkeson Coal & Coke Co.,* 19 Wash. 473, 53 Pac. 725.

Error is based upon the refusal of the court to give several instructions asked by the appellant, but the most of them are erroneous, if the instructions which the court gave are

correct, and inasmuch as the court gave the following instruction:

"The plaintiff brings this action against defendant to recover damages for injuries which he claims he sustained by reason of the negligence of the defendant. The burden of proving negligence rests on the party alleging it, and where a party alleges negligence on the part of another as a cause of action he must prove the negligence by a preponderance of evidence, as verdicts must stand upon evidence and are not permitted to rest upon mere conjecture, however plausible. There is no presumption that because the plaintiff was injured the defendant was negligent; therefore, in this case, if the jury finds that the weight of evidence is in favor of the defendant, or that it is equally balanced, then the plaintiff cannot recover and your verdict should be for the defendant,"

it was not necessary to give the instructions asked for by the appellant to place all the questions of law involved in the case fairly before the jury.

No error appearing in any respect, the judgment is affirmed.

MOUNT, C. J., FULLERTON, and HADLEY, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.