[No. 5338. Decided April 28, 1906.]

HERBERT L. WILLIAMS, *Respondent,* v. SPOKANE FALLS & NORTHERN RAILWAY COMPANY, *Appellant.*[1]

DAMAGES—VALUE OF SERVICES—EVIDENCE—ADMISSIBILITY. In an action for damages for personal injuries sustained by a mail clerk, whose employment and promotion depends upon fixed civil service rules, it is competent to show the salaries to which he would be entitled upon promotion, upon the issue as to his earning capacity.

WITNESSES—PHYSICIANS—PRIVILEGED COMMUNICATIONS. A patient waives the privilege attached to the statements of his physician when he permits him to testify without objection.

SAME — CROSS-EXAMINATION. Upon the cross-examination of a physician as to the disability sustained by his patient, a wide lati-

1Reported in 84 Pac. 1129.

tude is allowed on cross-examination for the purpose of discrediting his testimony, and the same will be reviewed only for abuse of discretion.

DAMAGES—DEFENSES—CLAIM OF SIMULATION—ATTEMPTS AT SETTLEMENT IN REBUTTAL. In an action for personal injuries in which the defense claims that the plaintiff was not much injured, but was simulating "hysterical paralysis," evidence on the part of the plaintiff of repeated visits by the defendant's claim agent, in an endeavor to secure a settlement, is admissible in rebuttal.

DAMAGES—EXCESSIVE VERDICT—PARTIAL PARALYSIS. A verdict for $33,000 damages for injuries sustained by a mail clerk, a young man, resulting in partial paralysis, is excessive, and should be reduced to $20,000 (DUNBAR, J., dissenting).

Appeal from a judgment of the superior court for Spokane county, Richardson, J., entered May 27, 1904, upon the verdict of a jury for $33,000 damages for personal injuries. Affirmed on condition of remitting $13,000.

*M. J. Gordon* and *C. A. Murray,* for appellant.

*Graves & Graves,* for respondent.

## ON REHEARING.

MOUNT, C. J.—On May 22, 1905, we filed an opinion in this case, affirming the judgment rendered by the lower court. See 39 Wash. 77, 80 Pac. 1100, where the facts are stated. In that opinion we said:

· "In consideration of the fact that the amount of the judgment is not called in question, the second, third and fourth assignments of error are immaterial."

Subsequently, upon petition of appellant for a rehearing, we concluded that the amount of the judgment was called in question, and that we ought to consider the above named assignments, and we therefore granted the petition for a rehearing as to the assignments of error stated. Supplemental briefs were filed, and an argument has been heard, and we come now to consider the case upon those assignments.

The second assignment is to the effect that the court erred in permitting evidence of the fact that but for the injury

respondent's salary would have been increased. The witness Elwell, who was employed as chief clerk in the United States railway mail service, in the district comprising Spokane and Northport, was examined by the respondent for the purpose of showing the compensation received by postal clerks in the class to which respondent belonged at the time of the injury; also, as to the fact that, before being assigned to a run, applicants were required to pass the civil service examination. He was then asked the following question:

"Q. Now, what salary does he get when he becomes a regular mail clerk? A. On that run, the run on which he was at the time of the accident, the salary commences at $800 a year for—let's see, Mr. Williams would have probably sixty days to serve at the rate of $800 a year. Then, if his examination was satisfactory and if his work was satisfactory, he would then have been promoted to $900 a year. Then he would be put in the $1,000 class."

The witness was then interrupted and stated that, after each of these periods, another examination was necessary. An objection was then made that the evidence was too remote. This objection was overruled, and the witness proceeded:

"He would be in the $1,000 class. He would remain in that class until there was a vacancy in the $1,200 class, which is the highest class on the run at the present time."

Appellant urges that this evidence is purely speculative and conjectural, but we think not. The respondent was working under civil service rules. He had already passed his principal examination and his promotion to the $900 and $1,000 classes was reasonably sure to follow. In fact, after his injury and before his trial, he had been promoted from the $800 to the $900 class, but was unable by reason of his injury to go about his work. This case is unlike those cases where promotion depends upon the will of some individual or is speculative in other respects. It is governed by fixed rules, which being complied with promotion follows of course.

The third assignment is that the court erred in permitting

certain cross-examination of Dr. Potter, a witness for appellant. It appears that Dr. Potter had been called by former attorneys for the respondent to make examinations of the respondent. These examinations were made by Dr. Potter in his professional capacity. Dr. Potter was not called as a witness for the respondent, but he was called for the appellant, and testified without objection. He detailed the condition in which he found the respondent, and gave his opinion of the results which would follow. On cross-examination counsel for respondent, over appellant's objection, was permitted to ask questions as follows:

"Q. Now, did you ever hear of § 1649, second volume of Hill's Code, subdivision 4, which reads as follows: . . . A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which is necessary to enable him to prescribe or act for such patient? A. I never read the statute. Q. Did you ever hear there was such a statute? A. I have heard the matter discussed within the last two or three days. Q. Did you not, when you came on the witness stand to testify, know that, in your position as surgeon and physician to this boy, you had no right to come here and testify to what you found out about him, unless he consented to it? A. I did not. . . . Q. Do you consider that it is professional decency, when you are employed by a man, when you are taken into his secret bed chamber to treat him and find out all you know about him, is it considered decent in your profession to run over and tell it to somebody else who is hostile to that person? . . . A. Please repeat that. Q. I say, when you are employed by a sick man to go to his bedside and attend him, and he gives you every opportunity to get information concerning him, and you do go on and get that information by visit after visit, is it considered decent in your profession to run over and tell somebody else who is hostile to him, or who has interests antagonistic to his, everything you know about him? A. It is unethical under the circumstances as stated."

Other questions along this same line were permitted. Appellant insists that this cross-examination was improper. The

respondent, no doubt, waived his privilege when he permitted the doctor to give his testimony without making any objection thereto. *Lissak v. Crocker Estate Co.,* 119 Cal. 442, 51 Pac. 688; *Briesenmeister v. Supreme Lodge K. of P.,* 81 Mich. 525, 45 N. W. 977; *Lincoln v. Detroit,* 101 Mich. 245, 59 N. W. 617. But he had a right to discredit the witness by showing interest or bias in the case, and legitimate cross-examination was perfectly proper for that purpose.

A wide latitude is usually, and should be, given upon cross-examination, the extent of which must be governed largely by the discretion of the trial court. Such discretion will only be reviewed for abuse thereof. *Fleischner v. Beaver,* 21 Wash. 6, 56 Pac. 840; *State v. Coates,* 22 Wash. 601, 61 Pac. 726. While we think the cross-examination complained of as to this witness is very close to the line of error, because of the apparent unfair inferences which might have been drawn by the jury, yet, by reason of the fact that there were several other reputable doctors who had as good or better opportunities of knowing the condition of respondent as Dr. Potter had, and that these doctors gave substantially the same testimony as Dr. Potter, and against which doctors there was not shown any bias or prejudice or interest in the case, and for the further reason that the discretion of the trial court should not be reviewed except for abuse, we have concluded that the cause ought not to be reversed on this account.

The fourth assignment is that the court erred in permitting the respondent to testify on rebuttal as follows:

"Q. Herbert, while you were at the hospital, what about the claim agents of the defendant company coming frequently to see you and trying to get a settlement out of you? . . . A. Well, he came up there quite frequently. I cannot say as to how often. There was one week there he came two or three times. Now, I don't want to be misunderstood about it. When he first asked me about a settlement— Q. I don't want you to say anything about what he said. Just the fact of his coming here. A. One week he came three times. An-

other week two times.  He would drop in once in a while to
see how I was getting along.' '

It is contended that the purpose of this evidence was to
show an admission of liability on the part of appellant, and
that offers of compromise are inadmissible.  If the purpose
was as stated, there can be no doubt about the inadmissibility
of the evidence; but we think this was not the purpose of it
under the circumstances of the case.  The principal defense
of the appellant was that the respondent was in a large meas-
ure simulating his injuries.  Appellant's evidence tended to
show that respondent was afflicted with what the doctors
termed "hysterical paralysis," and that the pendency of a
lawsuit had a strong tendency to prevent improvement in
such cases.  The evidence above quoted was received by the
trial court upon the theory that it had a tendency to rebut
the evidence of the physicians by discrediting their state-
ments that respondent was suffering from hysterical paralysis,
because, under such circumstances, the attending physicians
would not have permitted the claim agent to visit this re-
spondent.  We think the evidence was admissible for that
purpose, and for that reason only.

Appellant insists upon this rehearing that the verdict is
excessive and should be reduced, even if we do not reverse the
case.  The verdict and judgment in the case was for $33,000.
We have gone carefully over all the evidence in the case, and
are satisfied that the verdict is largely excessive.  It is true,
the respondent is a young man of good habits, and that he
is severely injured; but there is much doubt in our minds,
as there must have been in the minds of the jury, that he is
permanently injured.  Conceding, however, that he is partial-
ly paralyzed, and that he can never walk and never regain
the sight of his left eye, we think that $20,000 is a large
measure for his injuries.  The respondent in this case was
no more severely injured than the respondent in *Melse v.
Alaska Commercial Co., ante* p. 356, 84 Pac. 1127, where we

reduced the verdict from $20,000 to $14,000. But respondent in this case is considerably younger and received at the time of his injury about the same amount of wages. Respondent insists that appellant cannot now raise the question of the excessiveness of the verdict, because it was not clearly pointed out in the opening brief. This was one of the grounds for a motion for a new trial, and the opening brief assigns the overruling of the motion as error. This is sufficient to raise the question.

The cause is therefore remanded to the lower court to grant a new trial unless the respondent, within sixty days after the remittitur is filed below, shall remit $13,000 from the judgment. If such sum is remitted within the time named, the judgment will stand affirmed for $20,000, which shall bear interest from the date of the verdict. Appellant shall recover costs of this appeal.

HADLEY, CROW, and ROOT, JJ., concur.

DUNBAR, J. (dissenting)—I dissent. Not because I am convinced that the judgment is not too large, but because that question is not involved in this case, and I think it is an excellent idea for this court to try causes on the issues which are made, and to confine itself to such issues. Ordinarily the practicing attorneys of this state can be relied upon to raise such issues in their briefs as they deem material to the best interests of their clients. Appellant's original brief presents twelve assignments of error, distinctly and concisely stated as follows: First, the court erred in refusing appellant's request to charge the jury to find for the defendant. Second, the court erred in overruling appellant's objection occuring in the examination of H. A. Elwell, a witness on behalf of respondent. The third and fourth assignments are, also, in relation to the admission of testimony. The fifth was in relation to allowing counsel to read from law books and authorities in the presence of the jury. The sixth, seventh, eighth, ninth, tenth and eleventh relate to the alleged error

of the court in giving and refusing to give instructions. The twelfth is that the court erred in overruling appellant's motion for a new trial.

If there is any intimation in these assignments of error that the verdict is excessive, it would certainly take a very powerful judicial microscope to discover it. And the argument which follows these assignments is addressed specifically to the errors assigned, and no claim was made, either by assignment of error or by argument, written or oral, that the judgment was excessive. This was understood by the respondent, who says in his answering brief, page 40: "Defendant did not contend in the lower court and does not contend here that the damages awarded were excessive." This statement is not challenged by the appellant in its reply brief, but the reply argument is confined to answering the respondent's contentions in relation to the errors assigned. On these briefs and oral argument, the cause was submitted to this court. But, says the majority, the question of the excessiveness of the verdict was raised because it was one of the grounds for a motion for a new trial, and the opening brief assigns the overruling of the motion as an error. This would have been sufficient, no doubt, to preserve the question and make it available for assignment, if it had really been assigned; but it is the assignments of error that this court deals with, and not what might have been assigned.

The object of a brief, manifestly, is to apprise the court and opposite counsel of the issues which are involved, and to assist the court in determining such issues. This is of so much importance that it has been provided for both by statute and by rule of this court. Section 15, page 127, of the Laws of 1893, provides for the service by the appellant of his opening brief, and adds, "which brief shall clearly point out each error that appellant relies on for a reversal." And to prevent any possible misleading of the respondent by any omission in the appellant's opening brief, the latter part of the

section provides further: "But the appellant shall not be permitted to urge in any such reply brief or statement of additional authorities or on the hearing, any grounds for reversal not clearly pointed out in his original brief." This law has been supplemented by this court by rule. Subdivision 2 of rule 8 provides, "each error relied on shall be clearly pointed out;" and rule 12 unmistakably points out what the result will be if this order is not obeyed. It is as follows: "No alleged error or mistake of the superior court will be considered by the supreme court unless the same be clearly pointed out in the appellant's brief." And yet, in the face of the statute and of its own expressed mandate, this court reverses a judgment upon an error which is not pointed out clearly or otherwise, and which was therefore presumably not relied upon. It cannot be possible that the court intends to announce a rule that will permit a litigant to come to this court, try his case upon errors specifically assigned, calling attention of the court and of opposite party, both by brief and oral argument, only to such assignment, and then, if defeated, ask by petition for rehearing for a reversal upon grounds first mentioned in such petition, upon the theory that he had assigned as error the overruling of the motion for a new trial. This would be inviting the use of masked batteries in contests before this court, whereas in all jurisdictions in the civilized world, litigants are compelled to wage an open warfare.

The object of the statute and the rule is obvious. It is to prevent an appellant, by dragnet assignments, from dumping in for the consideration of this court an undigested and undeterminable mass of records in which are incorporated questions both material and immaterial, and placing upon the opposing counsel and upon the court the burden of discovering, if possible, what rulings of the lower court he relies upon as error. In fact, this court has spoken with no uncertain sound on this subject. In *Haugh v. Tacoma*, 12 Wash. 386,

41 Pac. 173, 43 Pac. 37, wherein the opinion was written by Judge Gordon, the learned counsel now representing the appellant in this case, appellant's brief was stricken and the judgment affirmed because the errors relied upon for reversal were not clearly pointed out. In this case the errors are clearly pointed out. and discussed, but they do not include excessive damages. So that it is more certain in this case what errors were relied on than in the *Haugh* case, *supra*, where there was simply indefiniteness and uncertainty, and where the appellant was anxious by oral argument to make clear to the court the errors relied upon. But the learned judge who wrote the opinion in that case, in answer to the insistence of the counsel for appellant in a petition for rehearing that his points taken in connection with the statement of facts became intelligible, said: "Doubtless such is the case, but we think they should be made intelligible in the brief." And in that case, after citing the statute and the rule, we said: "We think that, in the preparation of the brief, counsel has wholly disregarded the plain provisions of the statute and the rules of this court," and quote approvingly from *Chicago etc. R. Co. v. Moffit,* 75 Ill. 524, where the court said, "Counsel operate a dragnet, but ask the court to do the sorting;" and from *Chicago etc. R. Co. v. Van Vleck,* 40 Ill. App. 367, the following: "We decline to enter upon the consideraton of alleged errors thus bundled upon us." Also, the following was quoted from *Brown v. Tolles,* 7 Cal. 398: "If a party complains of error, and seeks a reversal, it is due to us that he should show wherein the error consists. We cannot be expected to act in the double capacity of counsel and judges . . . and we cannot . . . be expected to wade through the record to find argument, or invent pretexts for reversing the cause." And much more was said in that case, to the effect that the brief must point out the errors relied upon without putting the neces-

sity upon this court of resorting to the record to determine
the material errors.

In *Chandler v. Cushing-Young Shingle Co.,* 13 Wash. 89,
42 Pac. 584, while the motion to strike the brief was denied
for the reason that it had complied with the law, we said :

"In this connection it may not be improper to observe that,
in our opinion, it was the purpose of the legislature in enact-
ing the law concerning the assignment of errors, to require
the appellant to so specifically set forth each and every al-
leged error that an inspection of the brief alone will fully
disclose the same. It was not the intention to require this
court to search through the entire record in a case in order
to determine what errors may have been committed, and if
a proposed assignment is such as to require it to do so, it will
be entirely disregarded."

I will ask how this court would be able to determine from
the assignment relied upon by the majority, viz., that the
court erred in denying the motion for a new trial, in what
particular it was that the court erred, without an investiga-
tion of the record, laying aside assignments which were spe-
cifically made in the brief. Certainly there appears nothing
in the brief to indicate that the assignment of error was
based upon the fact that the verdict was excessive. In con-
formity with the rule announced in the *Haugh* case, we
struck appellant's brief in *Perkins v. Mitchell etc. Co.,* 15
Wash. 470, 46 Pac. 1039, for the reason that the brief did
not point out the errors relied upon for reversal. The rule
was again announced in *Doran v. Brown,* 16 Wash. 703, 48
Pac. 251, and the brief stricken for the same reason. And in
*Sengfelder v. Hill,* 21 Wash. 371, 58 Pac. 250, we refused
to consider a contention of appellant made in the argument
because it was not included in the assignments of error.

Yet in the face of its own decrees and, I think, of uni-
versal authority under statutes and rules of courts similar to
ours, this judgment is reversed, for it is in effect a reversal
of the judgment. Says the majority: "The appellant in-

sists upon the rehearing that the verdict is excessive, and should be reduced even if we do not reverse the case." This is evidently an inadvertence in the statement of the case. The learned counsel for the appellant was consistent in his application, but the court evidently does not yet seem to understand his position, for while, of course, everything else being lost he would be glad, and so stated, of a modification of the judgment, his position is, in his petition for rehearing, not that the verdict should be modified because it was excessive, but because errors were committed by the court which entitled him to a new trial. On page 8 of the petition it is said:

"We are not asking for a modification of the judgment. We are simply asking what the law guarantees us, viz., a fair trial; and until we have the verdict of a jury upon a fair trial, where incompetent and prejudicial testimony is excluded and competent and relevant testimony of witnesses is received without such witnesses being unjustly held up for ridicule and disgrace, it is pure speculation to undertake to say what verdict or in what amount the truth and justice of the case requires."

As showing the object of the petition, and just what was asked by counsel for appellant, in the closing of the opening petition on page 17, it is said:

"While much, very much, might be said and strong grounds advanced for a rehearing upon the questions which you have discussed, yet to avoid confusion and in the firm belief that we are entitled to a rehearing because of the disposition made of assignments 2, 3 and 4, we are willing to confine this petition to their consideration only."

Two, three and four were the assignments which this court has just deliberated upon, viz., the errors of the court alleged in the introduction of testimony. Appellant's counsel, not only in his oral argument but in his reply brief on petition for rehearing, has not only not asked this court to modify the judgment, but has strenuously and, I think, logically in-

sisted that this court has no right to do so; and in his reply brief on the petition for rehearing—the last expression of counsel on the subject—on page 10, we find the following:

"We have said elsewhere in this brief that the injury arising from the incident complained of was more harmful to the case of the defendant than if the court had arbitrarily refused to allow the witness to be sworn. Is it logical to say that the remedy for such an error is to reduce the amount of the verdict? To what conclusion would you thus be led? Supposing that instead of depriving the defendant of the benefit of the testimony of one witness, the court had ruled out the testimony of two witnesses, you would naturally deduct a still greater sum from the verdict; and 'by the same token,' if the trial court arbitrarily shut out all of the defendant's testimony, you would meet the error by adjusting the amount to accord with your own views. Surely such would not be administering justice by the usual course, and the constitutional guaranty of 'fair trial' becomes meaningless."

Counsel for appellant has been consistent in the different presentations of the case. The inconsistency, in my judgment, is with this court. If prejudicial error was committed by the court on questions raised on the second, third and fourth assignments, which we refused to pass upon at the first trial, the judgment should be reversed. But this court, upon a final investigation of such alleged errors, has found that prejudicial error was not committed. That being true, the only logical thing to do is to affirm the judgment.