[No. 7677.  Decided June 15, 1909.]

ELSIE DE YOE, *Appellant*, v. SEATTLE ELECTRIC COMPANY,
*Respondent.*[1]

CARRIERS—INJURY TO PASSENGERS—STREET CARS—SUDDEN JERKS—
PRESUMPTIONS—RES IPSA LOQUITUR—EVIDENCE—SUFFICIENCY.  There
is no presumption of negligence in the starting of a cable car on a
steep grade with a sudden jerk, whereby a passenger standing in
front was thrown against a window which broke and injured a pas-
senger inside, where jerks in starting were frequent and unavoid-
able; and there being no other evidence of negligence or any show-
ing as to whether the standing passenger was negligent, a judgment
is properly directed for defendant notwithstanding a verdict for the
plaintiff.

SAME.  The doctrine of *res ipsa loquitur*, as applied to negligence
cases, applies only where the accident, in the light of ordinary ex-
perience, is inexplicable except as the result of negligence.

RUDKIN, C. J., FULLERTON, CHADWICK, and DUNBAR, JJ., dissent.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered June 6, 1908, in favor of
the defendant, notwithstanding the verdict of a jury ren-
dered in favor of the plaintiff, dismissing an action for per-
sonal injuries.  Affirmed.

*Vince H. Faben* and *S. H. Kelleran*, for appellant.

*James B. Howe* and *H. S. Elliott*, for respondent.

CROW, J.—Action by Elsie De Yoe against the Seattle
Electric Company, for personal injuries.  From a judgment
in favor of the defendant, the plaintiff has appealed.

On a trial of the issues joined by the pleadings, the jury
returned a verdict in favor of the appellant, but the trial
court thereafter sustained a motion for judgment notwith-
standing the verdict, and dismissed the action.  The appel-
lant now contends that the court erred in so doing.  The evi-
dence shows that the respondent owns a cable car line, which
it operates on a very steep grade on Madison street, in the

[1]Reported in 102 Pac. 446.

city of Seattle; that on September 10, 1907, appellant became a passenger on one of respondent's cars which she entered at First avenue, taking a seat in the forward end of the inclosed portion; that there was also an outside forward apartment for passengers; that at or near the Third avenue crossing, as the car was running up grade, it gave a severe jerk; that a passenger who was standing in the forward outside compartment was thereby thrown against a glass partition or window near which appellant was sitting, breaking the glass, and that the broken glass struck her face, causing serious injuries. The only witnesses produced by appellant, who testified as to the motion of the car, were the appellant herself and one A. J. Hassell. Appellant testified as follows:

"Q. Now, what next happened? A. Well, just as the car started up there was a lurch, and I was hurt when this gentleman on the outside was thrown through the window, his elbow or shoulder went into the glass and broke it to pieces, and run in the side of my face. . . . Q. What caused the car to jerk, if you know? A. Well, I could not say unless it was when the gripman clutched the cable. It may have been taken hold of too sudden or something. I know it was a severe jolt and caused the passengers to sway that were standing up, and those in the seats slipped to the back end of the car. Q. What, if you know, caused this man to come through the window; was it the jerk? A. Yes, sir. Q. And you don't know what caused the jerk, whether it was the taking up of the cable by the grip, or the taking up of the slack of the cable, or not; you don't know what it was? A. I know it was when the car started."

The witness Hassell testified on the same subject as follows:

"Q. Was there any considerable jerk? A. Well, now, I couldn't say in comparison. There was a jerk of the car. . . . Q. Did you hold on to the strap all of the way, or did you lose the strap? A. I think I hung on to the same strap until I got off at Fourth. Q. Did the jar wrench your hand any? A. No, sir. Q. You still held on to the strap? A. Yes, sir."

No other evidence as to the happening, or cause of the accident, or the jerking of the car was offered. The respondent produced evidence indisputably showing that a jerk, such as the one described by appellant and Hassell, was not an unusual occurrence in a cable car; that it was unavoidable, and that such a car, although handled in the most skillful and careful manner, could not be operated without frequent lurches and jerks. The appellant insists that the direct effect of the evidence produced by her was to show that the severe jerk caused the passenger who was standing outside to be forced through the window, thereby breaking the glass and injuring her; that the doctrine of *res ipsa loquitur* should be applied; that a *prima facie* case of negligence was shown against the respondent, which shifted to it the burden of showing that the jerk which caused the accident did not result from its negligence; that such *prima facie* case arising from the application of the doctrine of *res ipsa loquitur* was sufficient to carry the issue of respondent's negligence to the jury and sustain a verdict in favor of appellant; and that it was then within the sole province of the jury to determine whether the evidence offered by respondent was of sufficient weight and credibility to rebut appellant's *prima facie* case, to relieve respondent from the charge of negligence, and to prevent a recovery by appellant. In support of this contention appellant cites, with others, the following cases from this court, upon which she especially relies: *Firebaugh v. Seattle Elec. Co.*, 40 Wash. 658, 82 Pac. 995, 111 Am. St. 990, 2 L. R. A. (N. S.) 836; *Williams v. Spokane Falls & N. R. Co.*, 39 Wash. 77, 80 Pac. 1100; *Anderson v. McCarthy Dry Goods Co.*, 49 Wash. 398, 95 Pac. 325, 16 L. R. A. (N. S.) 931.

The doctrine contended for was applied in the cases cited, but in each of them the nature of the accident itself was such as to make it manifest not only that the accident occurred, but also that it could not have occurred without some negligence upon the part of the defendant, the character and cause

of which, if known at all, would be peculiarly within the knowledge of the defendant. It was evident in the *Firebaugh* case that the explosion would not have taken place if the apparatus had been in good working order and properly handled; in the *Williams* case, that the collision would not have occurred if the coupler had not parted and negligent switching had not been done; and in the *Anderson* case, that the basket would not have fallen if it had been properly adjusted and operated. It was apparent that the occurrences mentioned were, each and all of them, unexpected and exceptional events, out of the usual order of things; while in this action the jerk complained of was an incident of frequent occurrence in the operation of cable cars, consistent with care and proper equipment, which by its mere happening does not raise any presumption of negligence on the part of the respondent, and invoke the application of the doctrine of *res ipsa loquitur*. It is common knowledge that frequent jerks of a cable car result from its ordinary operation. The gripman could not use the cable to propel the car without frequent jerks or jolts. Were we to apply the doctrine of *res ipsa loquitur* to this action, the effect would be to render it impossible for a transportation company to operate cable cars in the most skillful manner without making a *prima facie* case of negligence against it every time an unavoidable jerk or jolt occurred.

In the *Firebaugh* case this court stated the true doctrine in the following language:

"The rule of *res ipsa loquitur* is based upon the apparent fact that the accident could not have happened without negligence on the part of the carrier; or, upon the literal meaning of the expression, that the thing itself speaks, and shows *prima facie* that the carrier was negligent."

In *Bartley v. Metropolitan Street R. Co.*, 148 Mo. 124, 49 S. W. 840, the court said:

"It is a matter of common knowledge, of which even a court is not ignorant, as well as a matter of physics, that

the rope of a cable railroad cannot be kept taut and that the jerks, which are common and unavoidable to such roads, are caused by the slack in the rope being taken up. In order to recover from a cable railroad, it is not enough to show that there was a jerk, but it must affirmatively appear that the jerk was an extraordinary or unusual one, or attributable to a defect in the track, an imperfection in the car or apparatus, or to a dangerous rate of speed, or to unskillful handling of the car by the gripman. (*Adams v. Railroad*, 9 App. D. C. 26; *Weaver v. Railroad*, 3 App. D. C. 436; *Railroad v. Snashall*, 3 App. D. C. 420; *Hayes v. Railroad*, 97 N. Y. 259; *Stager v. Railroad*, 119 Pa. St. 70, 12 Atl. 821; *Mitchell v. Railroad*, 51 Mich. 236, 16 N. W. 388; *Muller v. Railroad*, 48 N. Y. Superior Ct. Rep. 546; *Holland v. Railroad*, 155 Mass. 387, 29 N. E. 622; *Stewart v. Railroad*, 146 Mass. 605, 16 N. E. 466; *Railroad v. Cason*, 72 Md. 377, 20 Atl. 113). Clearly, the testimony in this case does not show anything extraordinary or unusual in the jerk; no defect in the track or car or apparatus is shown, and no negligence of the gripman is made to appear. It was therefore the duty of the trial court to so declare, and to sustain the demurrer to the evidence at the close of the plaintiff's case, and it was error on its part not to do so."

In *Black v. Third Avenue R. Co.*, 37 N. Y. Supp. 830, it was held that negligence on the part of those in charge of a cable car cannot be inferred merely from the fact that, as a plaintiff was about to take his seat, he was thrown to the floor by the sudden starting of the car, there being no evidence that any negligence or any unusual force was applied by the gripman. That case has been followed and approved in: *Needham v. Interborough Rapid Transit Co.*, 95 N. Y. Supp. 561; *Molloy v. New York City R. Co.*, 98 N. Y Supp. 211; and *Bollinger v. Interurban Street R. Co.*, 98 N. Y. Supp. 641.

The courts have repeatedly held that a sudden jerk of a cable car does not necessarily raise a presumption of negligence on the part of the carrier. Such jerks are frequently incident to the operation of cable cars as a large number of them are repeatedly connected with, and released from, the

same cable, thereby affecting each other's movements. This is a matter of common knowledge, which passengers are presumed to anticipate. There was no evidence in the trial of this action to show the position of the passenger, who appellant claims was forced through the glass; that is, whether he was standing carelessly and without support just previous to the accident. A slight jolt of the car while traveling up grade, accompanied by his carelessness, may have caused him to lurch against the glass, without the least possible negligence on respondent's part. The lower half of the window was protected with iron rods to guard against accidents. A sudden jerk on a passenger train of a steam railroad, or on a street car propelled by electricity, might be held to raise a presumption of negligence on the part of the carrier, which, in the case of a cable car, would be held to be consistent with careful operation.

The trial judge undoubtedly granted the motion for judgment notwithstanding the verdict for the reason that there was no proof of negligence on respondent's part, and that he had improperly denied respondent's previous motion for a directed verdict. The judgment is affirmed.

RUDKIN, C. J., MOUNT, GOSE, PARKER, CHADWICK, and MORRIS, JJ., concur.

### ON REHEARING.
[*En Banc.* Decided October 30, 1909.]

CROW, J.—Upon appellant's petition for a rehearing, this cause has been again presented to this court, sitting *en banc,* but after further consideration we have concluded to adhere to our former opinion.

Appellant's controlling contention, again urged on the rehearing, is that she is entitled to successfully invoke the rule of *res ipsa loquitur,* by reason of the single established fact that, without fault of her own, she was injured while traveling on respondent's car. In other words, she insists that the mere happening of an accident causing injury to a passenger,

without fault on his part, necessarily gives rise to such a presumption of negligence of the carrier as to make a *prima facie* case, and entitle the passenger to a recovery of damages for the injuries sustained. We regard this as being too broad a statement of the doctrine. The phrase *res ipsa loquitur*, as applied to negligence cases, is used to give expression to the idea that, when an accident is shown to be of such a character as, in the light of ordinary experience, is inexplicable except as the result of negligence, then negligence will be presumed. The accidents in *Firebaugh v. Seattle Elec. Co.*, 40 Wash. 658, 82 Pac. 995, 111 Am. St. 990, 2 L. R. A. (N. S.) 836; *Williams v. Spokane Falls & Northern R. Co.*, 39 Wash. 77, 80 Pac. 1100, and *Anderson v. McCarthy Dry Goods Co.*, 49 Wash. 398, 95 Pac. 325, 16 L. R. A. (N. S.) 931, were of such a character as, in the light of ordinary experience, were explainable from the standpoint of the plaintiff by the presumption of negligence only. Each and all of them were unusual, not to be ordinarily anticipated, and inconsistent with the idea of careful operation. No such showing is made in this case, the undisputed evidence being that jerks of a cable car are of ordinary occurrence, consistent with careful operation, and that they frequently happen without any act of negligence upon the part of the carrier.

In *Yazoo & M. V. R. Co. v. Humphrey*, 83 Miss. 721, 741, 36 South. 154, the court, discussing the doctrine of *res ipsa loquitur*, said:

"There is a large and well defined class of cases in which for injuries to passengers the negligence of the carrier is implied from the mere happening of the accident. In such cases proof of injury to the passenger joined to proof of the accident makes out against the carrier a *prima facie* case of failure to observe that high degree of care required of it under the law, and, if not rebutted, entitles the plaintiff to recover. This rule applies when a passenger train strikes an animal on the track and a passenger is thereby injured, or when the injury results from a collision between two trains on the same track, and other similar instances. . . . But this rule does not apply to all cases of injuries to passengers,

but only to such as are caused by happenings not ordinarily incident to the prosecution of the carrier's business in the customary manner, or by such accidents as do not usually occur without negligence on the part of the carrier."

See, also, *Hoffman v. Third Avenue R. Co.*, 45 App. Div. 586, 61 N. Y. Supp. 590.

In *Merrill v. Metropolitan St. R. Co.*, 73 App. Div. 401, 77 N. Y. Supp. 122, an injury was sustained by the plaintiff while a passenger on the defendant's street car, in consequence of the fact that another passenger, in the act of entering the car from the platform, was thrown against her by a violent jerk or jolt of the car. Yet the court held that, in the absence of any further evidence of negligence of the defendant, the plaintiff would not be entitled to recover.

If a passenger on a railway train or street car should be injured as the result of a derailment, a head-on collision, or some similar accident, a different state of facts would be presented, and the doctrine of *res ipsa loquitur* would undoubtedly apply, the occurrence being such an unusual one, and of such a character as to be explained only on the theory of some act of negligence on the part of the carrier or its servants, unknown to the passenger. The undisputed evidence in this case being that jerks upon a cable car are of ordinary occurrence, unavoidable, and consistent with careful operation, and no additional evidence to show negligence being presented, the judgment must be affirmed. It is so ordered.

MOUNT, PARKER, MORRIS, and GOSE, JJ., concur.

RUDKIN, C. J. (dissenting)—The appellant was seriously injured while riding on a street car operated by the respondent company. There is no claim that she was guilty of contributory negligence, nor is it seriously claimed that the injury was the result of an unavoidable accident. It must therefore be attributable to one of three causes; first, negligent operation of the car; second, negligent construction of the car which would permit of such an injury to a passenger; or, third, the independent negligence of a fellow passenger.

For the first two causes the respondent is answerable, and the finding of the jury against it is in my opinion supported by competent testimony.   I therefore dissent.

FULLERTON, CHADWICK, and DUNBAR, JJ., concur with RUDKIN, C. J.